**Joseph T. MEYER**

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, SOCIAL SECURITY ADMINISTRATION.**

**No. 21–80.**

United States Court of Claims.

Dec. 2, 1981.

Peter B. Broida, Washington, D. C., atty. of record, for petitioner. Passman, Price & Broida, Washington, D. C., of counsel.

Thomas W. B. Porter, Washington, D. C., with whom was Acting Asst. Atty. Gen., Thomas S. Martin, Washington, D. C., for respondent. Wayne Brown, Dept. of Health and Human Services, of counsel.

Before DAVIS, KASHIWA and SMITH, Judges.

## OPINION

SMITH, Judge:

This civilian pay case is before the court on petitioner's appeal for review of an order of the Merit Systems Protection Board (MSPB). The question to be decided is what standard of review should have been applied by the MSPB at the particular time it considered petitioner's case.

Petitioner claims that Congress intended for the preponderance of the evidence standard of review in section 7701(c)(1)(B) of title 5 to be applicable when the MSPB considers agency denials of within-grade pay increase actions, at least until the end of the "interim period." The "interim period" is the period from the effective date of

section 4303 of the Civil Service Reform Act of 1978,[1] January 11, 1979, to October 1, 1981, or to the date, if earlier, that the agency establishes a section 4302 of title 5 performance appraisal system. However, respondent argues that the legislative history of the Civil Service Reform Act (act) indicates it was Congress' desire that the MSPB would base its review of denials of within-grade pay increases on the section 7701(c)(1)(A) of title 5 substantial evidence standard. Having examined the submissions and having heard the arguments of the parties, we find respondent's position the more compelling argument, and therefore affirm the order of the MSPB.

## I.

Petitioner is employed as a social insurance claims representative, GS–10, step 8, at the Social Security Administration's (SSA) District Office in Athens, Georgia. On May 30, 1979, petitioner was sent a letter from the SSA stating that a number of times in 1978 and in a March 20, 1979, memorandum petitioner was informed of the level of competence required for his position and his deviation from that standard. The letter went on to inform petitioner that, because of his failure to meet an acceptable level of competence, he would be denied his May 20, 1979, within-grade pay step increase.

Petitioner sought reconsideration of the denial of his step increase by filing an internal agency appeal. On December 12, 1979, the SSA affirmed petitioner's supervisor's determination that petitioner's work performance did not entitle him to progress to the GS–10, step 9, level. Petitioner, on December 20, 1979, appealed the agency's action to the MSPB Atlanta Field Office.

The field office board conducted a hearing on March 12 and 13, 1980. It found that, based on *Parker v. Defense Logistics Agency*,[2] appeals under section 5335 of title

---

1. Pub.L. No. 95–454, 92 Stat. 1111 (1978).

2. *Parker v. Defense Logistics Agency*, MSPB Order No. 80–47 (Feb. 19, 1980). *Wells v. Harris*, MSPB Order No. 80–3 (Dec. 17, 1979),

cited by petitioner is inapplicable here since in that case the board was concerned with how 5 U.S.C. § 7701(c)(1) (Supp.III 1979) applied to removal actions—actions which Congress clearly addressed.

5 (periodic step-increases) are governed by the substantial evidence standard found in section 7701(c)(1)(A) of title 5.[3] Using that standard, the field office's April 18, 1980, initial decision held that the SSA's action was supported by the evidence presented.

On May 21, 1980, petitioner filed with the MSPB his petition for review of the field office's initial decision. In its order of October 8, 1980, the MSPB held that petitioner's petition did not meet the MSPB's criteria for review[4] and, therefore, the MSPB summarily denied the appeal. On November 7, 1980, petitioner, finding jurisdiction under section 1491[5] as referenced to by section 7703(b)(1), filed with this court a petition for review.[6]

## II.

Congress acted to reform the Civil Service in order to increase the efficiency and effectiveness of the federal bureaucracy. In the process of drafting a comprehensive scheme of reform Congress failed to address specifically how the mechanics of the act would function in certain situations. What standard of review should be applicable to employee appeals before the MSPB for denials of within-grade pay increases (WGPI) is one such statutory lapse. In the process of deciding this issue, we are directed by the principle that

> a section of a statute should not be read in isolation from the context of the whole Act, and that in fulfilling our responsibility in interpreting legislation, "we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law, and to its object and policy." * * * [Footnotes omitted.][7]

The issues raised in this case center around section 7701(c)(1) of title 5 which provides the relevant standards of review for MSPB hearings of agencies' personnel actions. That section provides:

> Subject to paragraph (2) of this subsection, the decision of the agency shall be sustained under subsection (b) only if the agency's decision—
>
> (A) in the case of an action based on unacceptable performance described in section 4303 of this title, is supported by substantial evidence, or
>
> (B) in any other case, is supported by a preponderance of the evidence.

Section 4303(a) states that "[s]ubject to the provisions of this section, an agency may reduce in grade or remove an employee for unacceptable performance." Unacceptable performance is defined as being the "performance of an employee which fails to meet established performance standards in one or more critical elements of such employee's position."[8]

One other section of title 5 is relevant to our discussion. Subsection (c) of section 5335 (periodic step-increases) provides, in part, that "[w]hen a determination is made * * * that the work of an employee is not of an acceptable level of competence, the employee is entitled to prompt written notice * * *. If the determination is affirmed [by the agency] on reconsideration, the employee is entitled to appeal to the Merit Systems Protection Board."

## III.

An examination of the legislative history of the act reveals a general scheme to give

---

**3.** Unless otherwise noted, all statutory sections cited hereafter are contained in title 5 of the United States Code (Supp.III 1979).

**4.** 5 C.F.R. § 1201.115 (1981).

**5.** 28 U.S.C. § 1491 (1976).

**6.** "(b)(1) Except as provided in paragraph (2) of this subsection, a petition to review a final order or final decision of the Board shall be filed in the Court of Claims or a United States court of appeals as provided in chapters 91 and 158, respectively, of title 28. Notwithstanding any other provision of law, any petition for

review must be filed within 30 days after the date the petitioner received notice of the final order or decision of the Board." 5 U.S.C. § 7703(b)(1) (Supp.III 1979).

**7.** *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591, 592, 7 L.Ed.2d 492 (1962).

**8.** 5 U.S.C. § 4301(3) (Supp.III 1979). The procedures for establishing performance appraisal systems are set out at 5 U.S.C. § 4302 (Supp.III 1979).

supervisors more latitude in actions against undesirable employees. In discussing the amendments to chapter 77 of title 5, the report of the Senate Governmental Affairs Committee stated that the changes were

> intended to give agencies greater ability to remove or discipline expeditiously employees who engage in misconduct, or whose work performance is unacceptable. Henceforth, the Board and the courts should only reverse agency actions under the new procedures where the employee's rights under this title have been substantially prejudiced.[9]

More specifically, the legislative history, as summarized in the House Conference Report, of section 7701(c)(1) is informative as to what standard of review Congress intended for the MSPB to apply in WGPI cases.[10]

The Senate bill provided that agency actions for unacceptable performance would be upheld unless "there is no reasonable basis on the record for the agency's decision." For actions based on misconduct the standard of review was to be substantial evidence. However, the House bill applied a preponderance of the evidence standard for both actions.[11]

As cited above, section 7701(c)(1), as finally enacted, has a preponderance of the evidence standard for misconduct cases, while the standard for performance cases is substantial evidence.

The committee agreed to a lower standard of proof for performance cases "because of the difficulty of proving that an employee's performance is unacceptable."[12] The committee selected the substantial evidence standard "both because it is clearly a *lower standard than now used in performance cases* and because it is a generally understood term in administrative law."[13] (Emphasis added.)

While not directed at WGPI actions,[14] the above legislative history demonstrates that Congress' intent was to change the personnel system in order to give agencies broader and more flexible means of disciplining and removing employees whose work performance is inadequate.

We now consider how denials of within-grade pay increase actions fit within the general scheme of the act.

#### IV.

■ It can be assumed that when Congress drafted the act, it was aware of the standard used by the Civil Service Commission and by this court in WGPI cases.[15] Prior to the act, the standard of review applied by the Civil Service Commission, MSPB's predecessor, for a denial of a WGPI was "whether the action was arbitrary, or whether it was otherwise accomplished contrary to the Commission's regulations."[16] We also applied an arbitrary and capricious test prior to 1978.[17]

**9.** S.Rep. No. 95–969, 95th Cong., 2d Sess. 51, *reprinted in* [1978] U.S.Code Cong. & Ad.News 2723, 2773.

**10.** H.R. Con.Rep. No. 95–1717, 95th Cong., 2d Sess. 138, *reprinted in* [1978] U.S.Code Cong. & Ad.News 2860, 2872.

**11.** *Id.*

**12.** *Id.*

**13.** *Id.* See 4 K. Davis, Administrative Law Treatise § 29.02 (1958 & Supp. 1970).

**14.** See *Parker v. Defense Logistics Agency, supra* note 2, MSPB Order No. 80–47 at 21.

**15.** *See Service Armament Co. v. United States,* 215 Ct.Cl. 199, 567 F.2d 377 (1977), *cert. de-*

*nied,* 436 U.S. 917, 98 S.Ct. 2262, 56 L.Ed.2d 758 (1978); *Pacific Far East Line, Inc. v. United States,* 211 Ct.Cl. 71, 544 F.2d 478 (1976).

**16.** U. S. Civil Service Commission, Federal Employee Appeals Authority, FEAA Operations Memo No. 75–15, Acceptable Level of Competence Appeals—Guidance Material for Chief Appeals Officers, Attachment at 2 (Sept. 27, 1974).

**17.** *See Ruderer v. United States,* 188 Ct.Cl. 456, 459, 412 F.2d 1285, 1288 (1969), *cert. denied,* 398 U.S. 914, 90 S.Ct. 1716, 26 L.Ed.2d 77 (1970); *Creamer v. United States,* 174 Ct.Cl. 408, 416, *cert. denied,* 385 U.S. 819, 87 S.Ct. 42, 17 L.Ed.2d 57 (1966).

It, therefore, could be argued that since Congress failed to include section 5335 actions under section 7701(c)(1), it wanted to retain the arbitrary and capricious standard of review for WGPI actions. However, we reject that argument and accept the MSPB's conclusion in *Parker* that section 7701(c)(1) governs WGPI actions.

In *Parker*, the MSPB was confronted with the same issue we have here—how negative WGPI's fit within the terms of section 7701(c)(1). The MSPB began its analysis by pointing to section 7701(c)'s legislative history. That history shows that Congress rejected the arbitrary and capricious standard.[18]

The board then turned its attention to the phrasing of section 7701(c)(1)(A). The board found that WGPI actions could be inferred to be included within the clause "an action based on unacceptable performance described in section 4303 of this title." The board based this result on four factors. First, in section 4302(a)(3),[19] Congress indicated its desire to create a unified system where performance appraisals would be used to provide bases for all personnel actions including "rewarding * * * employees."[20] Second, the Office of Personnel Management, through its section 4305 authority, included WGPI denials among the personnel actions in which agencies were required to use section 4302 performance appraisals as bases for decisions.[21]

Third, the Senate report on the act offers glimpses of congressional intent on performance actions. The report states that the act "requires that performance evaluation be used as a basis for *all* decisions about rewarding, promoting, and retaining Federal employees."[22] (Emphasis added.) The report also states that "[t]he actions [under section 4303] *primarily* contemplated are reduction in grade or dismissal from the service."[23] (Emphasis added.) This indicates that, while Congress' attention was directed at removal and demotion actions, it wanted section 4303 to be applicable to all performance actions.

Fourth and most important, the board concluded, and we agree, that the impetus behind Congress' passing of the act was its desire to give supervisors more latitude in personnel actions and employees more effective appeal rights. Therefore, it stretches credulity too far to assign to Congress the intent to create a system where a removal action based on unacceptable performance is governed by a substantial evidence test (section 7701(c)(1)(A)) but a denial of a WGPI is governed by the preponderance of the evidence test (section 7701(c)(1)(B)). Furthermore, when the prior standard for WGPI actions is taken into account, it is absurd to come to the conclusion that Congress, while decreasing or maintaining the agency employer's burden of review for all other personnel actions, intended, without ever stating so, to increase the agencies' burden of review from the lowest standard, arbitrary and capricious, to the highest, preponderance of the evidence. We refrain from giving such a strained construction to the act[24] and, in-

---

18. *Parker v. Defense Logistics Agency, supra* note 2, MSPB Order No. 80–47 at 17.

19. Section 4302(a) provides, in part, as follows:
   "(a) Each agency shall develop one or more performance appraisal systems which—
   *   *   *   *   *   *
   "(3) use the results of performance appraisals as a basis for training, rewarding, reassigning, promoting, reducing in grade, retaining, and removing employees[.]"

20. *Id.*

21. "Performance appraisal systems shall be used:
   *   *   *   *   *   *

"(2) *As a basis for decisions to grant awards;* grant or *withhold pay increases, i.e., within-grade increases, step increases,* and quality step increases; grant merit pay; reassign; promote; train; retain in reduction in force; and reduce in grade or remove." (Emphasis added.) 5 C.F.R. § 430.203(i) (1981).

22. [1978] U.S. Code Cong. & Ad.News, *supra* note 9 at 2732.

23. *Id.* at 2764.

24. "[C]ourts will not construe a section of an act, in the absence of an unmistakable directive, in a manner which runs counter to the broad goals Congress sought to achieve." *Far-*

stead, hold that the less dramatic change to the substantial evidence test of section 7701(c)(1)(A) provides the proper standard of review for the MSPB to use when deciding whether an agency's denial of a WGPI should be sustained.

### V.

Unfortunately, finding that the substantial evidence standard is applicable to denial of WGPI actions does not settle this case. Here, the agency, SSA, did not have an approved section 4302 performance appraisal system available to use as a basis for denying petitioner's WGPI. Petitioner, therefore, claims that since the SSA's action is not "based on unacceptable performance described in section 4303," [25] the preponderance of the evidence standard should be used.

Petitioner argues that Congress intended for the higher standard to be used during the interim period in order to give agencies an incentive to have performance appraisal systems in place as rapidly as possible. Petitioner is unable to point to any of the act's legislative history to support this position; we conclude that there is none.

For petitioner to be correct, we would have to assign to Congress the intent to create a very bizarre appeal system. Prior to the act's effective date, an arbitrary and capricious standard would be applicable for WGPI actions. During the interim period, or, if earlier, until an agency has established a performance appraisal system, the preponderance of the evidence standard would be used. And finally, after an approved performance appraisal system is in place, an agency would only have to meet the substantial evidence standard in order to be sustained by the MSPB.

Petitioner's proposed system is one which could render vastly different results to a borderline case within a period as short as 3 days. Such a system has been referred to as the "jumping-jack," "elevator," and "yo-yo" system; but, by whatever name it is called, it is a child whose paternity cannot be traced to Congress. We therefore hold that the substantial evidence standard of review is also applicable throughout the interim period.

### VI.

In summary, petitioner argues that a strict reading of section 7701(c)(1)(A) requires that the MSPB be guided by the preponderance of the evidence standard of review when deciding a denial of a WGPI case. On its face, petitioner's argument has validity. Section 4303 does not expressly address itself to an agency's refusal to increase an employee's pay. Also section 5335 is not, according to the statute's phrasing, directly linked to the substantial evidence standard of review stated in section 7701(c)(1)(A). Therefore, the mechanics of section 7701(c)(1) would seem to place a denial of a WGPI within subsection B— "any other case." However, for the reasons stated above, we hold that requiring the MSPB to use the substantial evidence standard of review for WGPI actions provides a result more in line with the general scheme of the act. This holding does not take away any rights that federal employees had before the Civil Service Reform Act: in section 7701(a) [26] Congress provided a new right to a hearing for employees appealing a denial of a WGPI; further, the substantial evidence test is, if not higher, not lower than the standard of review (arbitrary and

---

*rell Lines, Inc. v. United States*, 204 Ct.Cl. 482, 500, 499 F.2d 587, 598 (1974). "[I]t is the duty of the courts to give intent to the acts of Congress which do not result in an absurdity." *Jennings v. United States*, 144 Ct.Cl. 28, 34, 168 F.Supp. 781, 785 (1958).

**25.** 5 U.S.C. § 7701(c)(1)(A) (Supp.III 1979).

**26.** "(a) An employee, or applicant for employment, may submit an appeal to the Merit Systems Protection Board from any action which

is appealable to the Board under any law, rule, or regulation. An appellant shall have the right—

"(1) to a hearing for which a transcript will be kept; and

"(2) to be represented by an attorney or other representative.

"Appeals shall be processed in accordance with regulations prescribed by the Board." 5 U.S.C. § 7701(a) (Supp.III 1979).

capricious) previously used. Finally, the court does not see the problems that petitioner envisions for the MSPB and respective counsel in handling a case where a WGPI action, calling for the substantial evidence standard, is linked with a misconduct removal action, where the preponderance of the evidence standard would be applicable. However difficult it will be for the MSPB and attorneys to apply two standards in this hypothetical situation, they must, since after a performance appraisal system is in force there is no way for section 7701(c)(1) to operate without a dual standard of review being applicable to the above facts.

### CONCLUSION OF LAW

The court concludes as a matter of law that the MSPB properly applied the substantial evidence standard of section 7701(c)(1)(A) in its review of the denial of a within-grade pay increase to petitioner. The parties raised no other issue, and the order of the MSPB is affirmed.