**Glenn A. STANKIS, Petitioner,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

Nos. 82–4240, 82–4261.

United States Court of Appeals, Fifth Circuit.

Sept. 9, 1983.

David T. Lopez, Houston, Tex., for petitioner.

James R. Gough, Jim C. Ezer, Linda M. Cipriani, Asst. U.S. Attys., Houston, Tex., Harles R. Benthul, Office of Counsel, Region VI, Dallas, Tex., for respondent.

Evangeline W. Swift, Mary L. Jennings, Deborah A. Stover-Springer, Gen. Counsels,

Merit Systems, Protection Bd., Washington, D.C., for intervenor.

Before INGRAHAM, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

An employee of the Environmental Protection Agency challenges the standard of review that the Merit Systems Protection Board (MSPB) used in upholding the denial of his periodic within-grade increase in salary. 5 U.S.C. § 7703. We hold that the proper standard for MSPB review is "preponderance of the evidence" rather than "substantial evidence," and remand to the Merit Systems Protection Board for reconsideration.

Petitioner Glenn A. Stankis works for the Environmental Protection Agency (EPA) as a supervisor sanitary engineer, compensated on the General Schedule at the pay grade of GS–13. On August 14, 1979, the EPA issued a determination that Stankis was not performing at an acceptable level of competence (ALOC). The EPA used that negative ALOC report, generally known as a performance appraisal, to deny him his periodic raise, known in administrative parlance as a within-grade increase (WGI).[1] See 5 U.S.C. § 5335. Stankis appealed his performance appraisal and denial of the WGI, contending that the EPA had not given sufficient advance warning of an impending negative rating, as required by 5 U.S.C. § 4303(b)(1)(A). The EPA then issued another negative performance appraisal on December 5, 1979, which fulfilled the statutory notice requirement.

Stankis petitioned the Merit Systems Protection Board (MSPB) to review the agency's action, as provided in 5 U.S.C. § 5335(c). A presiding official of the MSPB held an evidentiary hearing and con-

---

1. Federal employees under the General Schedule are paid according to published pay grades. Within each grade are several "steps" in pay. A GS–13 employee like Stankis might begin at grade 13, step 1, known as GS–13–01, and receive periodic raises through the many steps within each grade. These pay raises are known as within-grade increases, or WGI's. They are also referred to as step increases. This opinion adopts the term WGI.

cluded, on February 22, 1980, that the August, 1979 appraisal, and hence the denial of the WGI, were not supported by a *preponderance* of the evidence and should be reversed. The EPA petitioned for review by the full MSPB.

While that petition was pending, the MSPB ruled in another case, *Parker v. Defense Logistics Agency,* 1 M.S.P.B. 489 (1980), that the applicable standard for reviewing all performance appraisals should be *substantial* evidence, not preponderance of the evidence. The MSPB then vacated its earlier ruling on Stankis' appraisal of August, 1979, and held instead that the August appraisal was supported by *substantial* evidence. Similarly, the MSPB ruled that Stankis' December, 1979 performance appraisal was also supported by *substantial* evidence. The denials of the WGI were upheld.

Stankis petitioned the full MSPB to reconsider its rulings. The MSPB denied review on May 24, 1982. Stankis filed a timely petition before this Court for review of the final, adverse MSPB ruling. 5 U.S.C. § 7703.

In 1980, while these administrative proceedings were taking place, Stankis once again became eligible for a WGI. The EPA issued another negative performance appraisal dated October 6, 1980, and withheld the WGI once again. Stankis again undertook administrative review procedures, and the MSPB's final ruling on June 11, 1982 was that the 1980 performance appraisal and the denial of WGI were supported by *substantial* evidence. Stankis filed a petition for review before this Court, and requested consolidation of his two review petitions. We consolidated the two appeals, and now review the denials of WGI's based

upon all three negative performance appraisals.

### Legal Standards

This Court's jurisdiction to review these MSPB decisions, and the applicable standard for such review are both set forth in 5 U.S.C. § 7703. We may remand for consideration if, *inter alia,* the MSPB's decision is not in accordance with the law. Stankis argues that the MSPB ignored its statutory mandate when it reviewed his claims under the "substantial evidence" standard rather than the "preponderance" standard. We agree and remand for reconsideration under the proper "preponderance" standard.

The standard of review for the MSPB to apply to appeals of agency determinations is set out in 5 U.S.C. § 7701(c). This subsection allows the MSPB to reverse an agency determination for certain serious shortcomings [2] or if the agency's evidence does not meet the required burden of proof. That burden, described in 5 U.S.C. § 7701(c)(1), demands that the ruling:

(A) in the case of an action based on unacceptable performance described in [5 U.S.C. § 4303], is supported by substantial evidence, or

(B) in any other case, is supported by a preponderance of the evidence.

In the case before us, respondent EPA and intervenor MSPB argue that a denial of a WGI based on unacceptable performance, is "described in section 4303" and hence subject to a mere substantial evidence test. Stankis contends that the denial is not described in section 4303 and therefore is subject to the "preponderance of the evidence" test, a more difficult burden of proof for the government.[3] Whether the MSPB applied the proper evidentiary test under section 7701 is clearly a question of whether a

---

**2.** The MSPB may not affirm an agency decision that:

(A) shows harmful error in the application of the agency's procedures in arriving at such decision;

(B) shows that the decision was based on any prohibited personnel practice described in [5 U.S.C. § 2302(b)]; or

(C) shows that the decision was not in accordance with law.

5 U.S.C. § 7701(c)(2).

**3.** This issue is much more than a matter of semantics for Stankis. Indeed, the MSPB once reversed the agency regarding the August, 1979, negative ALOC report, based on a preponderance of the evidence test, and then later upheld it on the substantial evidence test.

negative performance evaluation leading to a denial of a WGI is described in 5 U.S.C. § 4303. We turn now to an analysis of that section.[4]

### Scope of Section 4303

Title 5, Chapter 43 of the United States Code covers performance appraisal for government employees, and section 4303 therein sets out the actions that an agency may take based on the unacceptable performance of its employees. It allows an agency to "reduce in grade or remove an employee for unacceptable performance."[5] A denial of WGI is not listed in section 4303. It is covered instead under section 5335, which specifically discusses WGI's. The question before us is whether the sanction of withholding a WGI for unacceptable performance, a sanction less severe than a reduction in grade or a removal, is included sub silentio with the two listed sanctions of section 4303.

The Court of Claims has held that lesser-included sanctions are covered under section

**4.** Some courts have held that section 4303 cannot apply even to a removal from employment unless the agency has instituted a performance appraisal system for employees as described in 5 U.S.C. § 4302. *Debose v. U.S. Dept. of Agriculture,* 700 F.2d 1262 (9th Cir.1983); *Kochanny v. Bureau of Alcohol, Tobacco and Firearms,* 694 F.2d 698 (Fed.Cir.1982); *Wells v. Harris,* 1 M.S.P.B. 199 (1979). We do not address today the scope of 5 U.S.C. § 4303 as applied to a removal or demotion, however.

**5.** § 4303. Actions based on unacceptable performance

(a) Subject to the provisions of this section, an agency may reduce in grade or remove an employee for unacceptable performance.

(b)(1) An employee whose reduction in grade or removal is proposed under this section is entitled to—

(A) 30 days' advance written notice of the proposed action which identifies—

(i) specific instances of unacceptable performance by the employee on which the proposed action is based; and

(ii) the critical elements of the employee's position involved in each instance of unacceptable performance;

(B) be represented by an attorney or other representative;

(C) a reasonable time to answer orally and in writing; and

(D) a written decision which—

(i) in the case of a reduction in grade or removal under this section, specifies the instances of unacceptable performance by the employee on which the reduction in grade or removal is based, and

(ii) unless proposed by the head of the agency, has been concurred in by an employee who is in a higher position than the employee who proposed the action.

(2) An agency may, under regulations prescribed by the head of such agency, extend the notice period under subsection (b)(1)(A) of this section for not more than 30 days. An agency may extend the notice period for more than 30 days only in accordance with regulations issued by the Office of Personnel Management.

(c) The decision to retain, reduce in grade, or remove an employee—

(1) shall be made within 30 days after the date of expiration of the notice period, and

(2) in the case of a reduction in grade or removal, may be based only on those instances of unacceptable performance by the employee—

(A) which occurred during the 1-year period ending on the date of the notice under subsection (b)(1)(A) of this section in connection with the decision; and

(B) for which the notice and other requirements of this section are complied with.

(d) If, because of performance improvement by the employee during the notice period, the employee is not reduced in grade or removed, and the employee's performance continues to be acceptable for 1 year from the date of the advance written notice provided under subsection (b)(1)(A) of this section, any entry or other notation of the unacceptable performance for which the action was proposed under this section shall be removed from any agency record relating to the employee.

(e) Any employee who is a preference eligible or is in the competitive service and who has been reduced in grade or removed under this section is entitled to appeal the action to the Merit Systems Protection Board under section 7701 of this title.

(f) This section does not apply to—

(1) the reduction to the grade previously held of a supervisor or manager who has not completed the probationary period under section 3321(a)(2) of this title,

(2) the reduction in grade or removal of an employee in the competitive service who is serving a probationary or trial period under an initial appointment or who has not completed 1 year of current continuous employment under other than a temporary appointment limited to 1 year or less, or

(3) the reduction in grade or removal of an employee in the excepted service who has not completed 1 year of current continuous employment in the same or similar positions.

4303 for the purpose of establishing the standard of review. In *Meyer v. Dept. of Health & Human Services,* 666 F.2d 540 (Ct.Cl.1981), a claims representative for the Social Security Administration was given a negative performance appraisal. He was not removed from federal service nor reduced in grade, the two sanctions expressly listed in section 4303. Instead, he was denied a WGI. The denial of the WGI was upheld on a substantial evidence standard.

The Court of Claims acknowledged that a WGI denial was not one of the listed sanctions in section 4303 that in terms would activate the substantial evidence standard enunciated in section 7701. Yet the Court of Claims considered the issue to be a "statutory lapse" in the "comprehensive scheme" of civil service reform, 666 F.2d at 542, and looked to general legislative history for clarification.

Four factors swayed the *Meyer* court. First, it noted a general congressional intent to develop performance appraisals into a unified system for supporting all personnel actions including "rewarding . . . employees." § 4302(a)(3). It read "rewarding" to include disciplining, the inverse of rewarding. Second, it noted that the Office of Personnel Management (OPM) included WGI's among the personnel actions subject to formal appraisal systems set forth in section 4302. The OPM treats on equal terms all personnel actions based on performance evaluations, whether or not such actions are of the type described in section 4303. *See* 5 C.F.R. § 430.203(i). The Court of Claims looked, third, to a Senate report on civil service reform legislation,[6] and, fourth, to general congressional intent to infer that governmental supervisors deserve wide latitude in personnel actions. If Congress was willing to give this wide latitude to a supervisor who writes a negative performance evaluation leading to dismissal, it argued, then it intended to give that same broad discretion if the identical performance evaluation is used instead to support a denial of WGI. The *Meyer* court refused to give what it termed a "strained construction" to the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (codified in scattered sections of 5 U.S.C.), and held that the WGI denial under review was subject to the substantial evidence standard.

This is the position that the MSPB first adopted in *Parker v. Defense Logistics Agency,* 1 M.S.P.B. 489 (1980), to which reference is made above.

The Third Circuit came to the opposite conclusion in *Schramm v. Dept. of Health and Human Services,* 682 F.2d 85 (3d Cir. 1982). The *Schramm* court relied on the plain language of the statute and the absence of a clear and contrary congressional intent to conclude that the only personnel actions subject to the substantial evidence standard are reductions in grade and removals. It reasoned that "[t]he legislative history reveals a substantial ambiguity in the standard of review Congress meant to be applied in cases such as [the petitioner's. However, in] the face of that ambiguity, we decline to rewrite the plain language of the Act, and hold that § 7701(c)(1) must be given its literal meaning." Since section 7701 applies the substantial evidence standard only to dismissals or reductions in grade based on unacceptable performance, the *Schramm* court ruled that all other adverse personnel actions, even those based on unacceptable performance, are subject to the preponderance standard.

Each court recognized a possible logical flaw in holding an agency to a lower burden of proof when the agency fires someone than when it merely denies a raise. The *Schramm* court considered this an "anomaly," 682 F.2d at 90, while the *Meyer* court charged it would create a "very bizarre appeal system." 666 F.2d at 545.

We have carefully examined the legislative history of the Civil Service Reform Act that enacted these provisions, as well as the practical consequences of each competing interpretation. We hold that the plain language of the statute controls. The result is not "bizarre," and the government must meet the higher level of proof—"preponderance of evidence."

---

6. S.Rep. No. 969, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723.

## Legislative Intent

### A. Plain Language.

We begin our inquiry into legislative intent by examining the plain language of the statute. "When interpreting statutes and regulations, the plain language of the statute or regulation controls our construction, absent a clearly expressed legislative intention to the contrary." *Oliver v. U.S. Postal Service*, 696 F.2d 1129 (5th Cir.1983) (per curiam). *Accord, Schramm, supra*, 682 F.2d at 87; *Alabama v. Marshall*, 626 F.2d 366, 368–69 (5th Cir.1980), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981). The statute before us states clearly that the only two exceptions to the preponderance standard are those based on unacceptable performance *and* listed in section 4303: removals from federal employment and reductions in grade. Within-grade increases are dealt with in a wholly different section of the statute. There is no ambiguity. We start with a strong presumption that Congress meant what it said. The plain language of the statute, if followed, would compel us to apply the preponderance of the evidence standard.

### B. Congressional Intent.

Next, we examine the legislative history of the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (codified in scattered sections of 5 U.S.C.), to see if Congress "clearly expressed" a contrary intent. *Oliver, supra*, 696 F.2d at 1131. We find the legislative history ambiguous and therefore insufficient to override the plain language of the statute.

There is some legislative history indicating that Congress intended the substantial evidence standard to apply to all appeals of sanctions based on negative performance appraisals. The House Conference Committee Report on the Civil Service Reform Act stated that it assumed the substantial evidence standard to apply to *all* performance-based sanctions, not merely the two described in section 4303:

> The conference substitute in section 7701(c) provides that the standard of proof in misconduct cases will be "preponderance of the evidence." The conferees agreed, though, that in performance cases a lower standard of proof should be required because of the difficulty of proving that an employee's performance is unacceptable. *The conference substitute therefore provides that an agency's decision in performance cases shall be upheld if its action is supported by substantial evidence in the record before the MSPB.* The substantial evidence test was adopted both because it is clearly a lower standard than now used in performance cases and because it is a generally understood term in administrative law.

H.Conf.Rep. No. 1717, 95th Cong., 2d Sess. 139, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2860, at 2872 (emphasis supplied).

The Senate Report expressed a similar outlook, suggesting that unacceptable performance cases could result in a wide variety of sanctions and would all be subject to the substantial evidence test. Other cases, such as those involving misconduct, would be governed by the preponderance test. S.Rep. 969, 95th Cong. 2d Sess. 44, 46, 54, *reprinted in* 1978 U.S.Code Cong. & Ad. News 2723, at 2766, 2768, 2776. The distinction between dismissal or demotion on the one hand and denial of WGI on the other as the result of unacceptable performance is not clearly articulated in the legislative history. Some statements in the Senate Report imply that employee appraisals would support a wide variety of sanctions, ranging from suspension through dismissal. *Id.* at 40, 41, 51, 1978 U.S.Code Cong. & Ad.News at 2762, 2763, 2773.

Yet there is also ample evidence that Congress meant to distinguish between removals or reductions in grade on one hand and less severe sanctions on the other. The Senate Committee boasted of how the Act streamlined the procedures for *dismissing* incompetent employees. *Id.* at 2, 1978 U.S. Code Cong. & Ad.News at 2724. It urged that incompetent government employees should not merely be retained and disciplined, but should be demoted or fired. *Id.* at 3, 4, 9, 19, 24, 1978 U.S.Code Cong. & Ad.News at 2725, 2726, 2731, 2741, 2746.

The Senate Report contemplated that the appropriate action to be taken against an incompetent employee is either dismissal or reduction in grade. To these two sanctions, the Act created an easier burden of proof for the government in order to facilitate the dismissal of incompetent employees. The Act changed this standard from the former test of "preponderance of the evidence" to the current substantial evidence. The change in standard was not lightly adopted—the standard of proof was considered "the most important part" of the reform. *Id.* at 44, 1978 U.S.Code Cong. & Ad.News at 2766. The Senate Report also acknowledged the seriousness of the removal sanction. *Id.* at 54, 1978 U.S.Code Cong. & Ad.News at 2776; *accord,* H.Conf.R. No. 1717, 95th Cong., 2d Sess. 138, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2860, at 2871. From these excerpts, it appears that Congress was focusing upon a lessened burden of governmental proof to demotions or firings based on unacceptable performance than would apply to other sanctions, even if the other sanctions were also based on unacceptable performance. *See generally* S.Rep. No. 969, 95th Cong., 2d Sess. 53–55, *reprinted in* 1978 U.S.Code Cong. & Ad. News 2723, at 2775–77 (discussing appellate procedures).

Thus, we find no clear conclusion from the legislative history of the Civil Service Reform Act. It might well be that Congress intended the substantial evidence standard to apply to all cases involving an employee's failure to meet required performance levels. Yet the only sanctions Congress listed under section 4303 as related to unacceptable performance are reduction in grade and removal. It is only to these two sanctions, then, that Congress expressly set the substantial evidence test. The application of the preponderance test for all other personnel actions, as the statute's literal wording commands, could be due to congressional oversight; yet it could just as easily be due to a congressional view recognizing only reduction in grade or removal as the proper sanctions to be of use for incompetence, as opposed to a denial of a WGI. A failure to grant a WGI does not necessarily involve unacceptable performance.

It is perhaps curious that a negative performance appraisal could support the serious sanction of removal and be subject to a more limited review than if that same appraisal were used to support the minor sanction of withholding a WGI. Yet Congress may have intended to encourage dismissal as the preferred sanction—the congressional history is filled with references to how the primary purpose of the law is to make it easier to *remove* incompetent employees. *Id.* at 3, 4, 9–10, 1978 U.S.Code Cong. & Ad.News at 2725, 2726, 2731–32. Congress could well conclude that blocking a somewhat routine pay increase requires a different standard of proof. The evaluation may well be more subtle than that used to support demotion or dismissal based upon unacceptable performance.

We do not struggle to divine the unequivocal intent of Congress, however. The wording of the statute itself is plain and clear. Ambiguous legislative history is not sufficient to sway us from the obvious and plain meaning of the statute. It is our responsibility to uphold the law as passed by Congress, not revise it in our image of what Congress might have wanted. The use of the "preponderance of the evidence" test does not destroy the fundamental purpose of the Civil Service Reform Act. As long as the words of a statute are not contrary to all logic and reason, and these provisions are not, we enforce them.

We therefore hold that the MSPB must review Stankis' claims under the "preponderance of the evidence" standard, and we remand for reconsideration.

REVERSED AND REMANDED.