815 F.2d 668
 Constance HORNER, Director, Office of Personnel Management, Petitioner,
and
Richard D. Williams, Intervenor,
v.
MERIT SYSTEMS PROTECTION BOARD, Respondent,
and
Mary F. Wieseman, Special Counsel, Intervenor.
 Appeal No. 86-1115.
 United States Court of Appeals,
Federal Circuit.
 March 24, 1987.
 
 Michael T. Paul, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for petitioner. With him on the brief, were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan. Ann Wilson and Steve Abow, Office of General Counsel, Office of Personnel Management, Washington, D.C., of counsel.
 Calvin Morrow, Merit Systems Protection Bd., Washington, D.C., argued, for respondent. With him on the brief, were Mary L. Jennings, Associate General Counsel for Litigation, Marsha E. Mouyal, Reviewer for Litigation and Bruce Mayor.
 William E. Reukauf, Associate Special Counsel for Prosecution, Office of the Special Counsel, Merit Systems Protection Bd., Washington, D.C., argued, for intervenor Wieseman. With him on the brief, were John P. Gidez, Atty., Mary F. Wieseman, Special Counsel and Lynn R. Collins, Deputy Special Counsel.
 Before RICH, Circuit Judge, BALDWIN, Senior Circuit Judge, and ARCHER, Circuit Judge.
 ARCHER, Circuit Judge.
 
 
 1
 The Director of the Office of Personnel Management (OPM) appeals the order of the Merit Systems Protection Board (MSPB or board), 27 M.S.P.R. 97 (1985), Docket No. HQ12068410013, finding that the Office of the Special Counsel (OSC) has authority under 5 U.S.C. Sec. 1206(e)(1)(D) and Sec. 1206(g)(1) (1982) to bring a disciplinary action against a federal employee. The board dismissed Count I of the disciplinary action and approved the settlement of the parties with respect to Count II. Both counts involve alleged improprieties in Williams' acceptance of gifts. We vacate and remand with instruction to dismiss for lack of jurisdiction.
 
 ISSUES
 
 2
 The crux of this appeal is whether the OSC has the authority pursuant to sections 1206(e)(1)(D) and 1206(g)(1)[1] to file a complaint with the board for discipline of an employee for an alleged violation of a civil service law, rule, or regulation, where the alleged violation is not related to personnel practices, Hatch Act violations, or merit systems abuse. The right of OPM to appeal the board's ruling is also raised as a preliminary issue.
 
 BACKGROUND
 
 3
 Richard D. Williams, a regional director of the Federal Mediation and Conciliation Service (FMCS), was charged with two counts of impropriety by the OSC. It is alleged in Count I that Williams accepted two gifts worth approximately $50.00 and $75.00 from lower paid employees in violation of 5 U.S.C. Sec. 7351(3) (1982). The OSC alleges in Count II that Williams accepted a gift of a weekend trip to Las Vegas in violation of 5 C.F.R. Secs. 735.201(a), (d), and (f) and 735.202(a)(1) and (3) (1986) from a subordinate employee and an officer of a union whose contract disputes are mediated by FMCS.
 
 
 4
 The Administrative Law Judge (ALJ) did not reach the merits of the case and dismissed the action, concluding that the OSC does not have authority under 5 U.S.C. Secs. 1206(e)(1)(D) and (g) to investigate and prosecute the alleged violations in this case. The board disagreed with the ALJ and found that the OSC does have authority to bring a general disciplinary action of the type involved here. The board reached its conclusion by comparing the House and Senate versions of section 1206(e)(1)(D) and focusing on the specific language allowing the OSC to investigate "activities prohibited by any civil service law, rule, or regulation, including any activity related to political intrusion in personnel decisionmaking; ...." 5 U.S.C. Sec. 1206(e)(1)(D). The board and the OSC suggest that the meaning of this provision is clear and not in conflict with other portions of the statute and urge this court to limit our inquiry to the plain meaning of the statute.
 
 
 5
 The board reached the merits and dismissed Count I under 5 C.F.R. Sec. 735.202(d) (1986), which permits gifts of nominal value made voluntarily by subordinate employees on a special occasion. With regard to Count II, the board granted the Joint Motion for Consent Disposition (settlement). Under the settlement, Williams stipulated to the charges in Count II and agreed to a fine of $1,000. In addition, Williams agreed to his removal from the Senior Executive Service (SES). Williams also specifically waived his right to oppose the Special Counsel's authority to bring charges under Count II before the board. Count I was not part of the settlement agreement. Pursuant to 5 U.S.C. Sec. 7703(d) (1982), OPM appeals the issue of whether the OSC has authority under the Civil Service Reform Act of 1978, Pub.L. No. 95-452, 92 Stat. 1111 et seq. (1978) (codified as amended in scattered sections of 5 U.S.C.) (CSRA) to bring this type of disciplinary action against Williams.
 
 OPINION
 I.
 A. OPM's Authority to Appeal
 
 6
 As a preliminary matter, the board argues that this appeal cannot be sustained because the board dismissed Count I and adopted the proposed settlement of Count II and thus left no live case or controversy. We reject this suggestion of mootness insofar as OPM is concerned. A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. Powell v. McCormack, 395 U.S. 486, 496-97, 89 S.Ct. 1944, 1950-51, 23 L.Ed.2d 491 (1969); United States v. Associated Dry Goods Corp., 682 F.2d 212, 213 (CCPA 1982). For the following reasons, we conclude that the judicial resolution of the issue of OSC's jurisdiction raised in this appeal remains live and is properly appealable by OPM.
 
 
 7
 OPM has been given a statutory right to seek judicial review of any final order or decision of the board that is determined by the Director of OPM to be an erroneous interpretation of a civil service law, rule, or regulation affecting personnel management and to have a substantial impact on such law, rule, or regulation. 5 U.S.C. Sec. 7703(d) (1982). Standing to initiate or maintain an action may be granted by statute. In Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970), the Court stated that "Congress can, of course, resolve the question [of standing] one way or another, save as the requirements of Article III dictate otherwise." (Citation omitted.) Accord Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). As a result, OPM is authorized to initiate and maintain this appeal. We have no question that the issue of the OSC's authority to bring a general disciplinary action against an employee, and in turn the issue of the board's jurisdiction to hear such a case, the latter being dependent on the former, is of vital interest to OPM, which has administrative responsibility for personnel practices and policies throughout most parts of government. These interests are more than sufficient to satisfy the section 7703(d) requirements and any Article III case or controversy requirement. Since OPM has standing and interests which are adversely affected by the board's decision, this case is properly before this court to resolve the issue of OSC's authority to initiate a general disciplinary action.
 
 
 8
 While Williams did not appeal the board's decision, the disciplinary action against him will be a nullity if we overturn the board's decision regarding OSC's authority. There is no requirement, however, that Williams must appeal in order for OPM to seek appeal. As stated, OPM has its own, independent statutory authority to petition for review in this court of final orders and decisions of the MSPB which meet the requirements of section 7703(d). Accordingly, the fact that Williams settled Count II and did not appeal the board's determination on Count I is irrelevant to OPM's right to appeal.
 
 
 9
 There are two additional related issues bearing on the propriety of OPM's appeal that do not require extensive treatment. The first of these is whether Sec. 1206(e)(1)(D) is a "civil service law" appealable under 5 U.S.C. Sec. 7703(d) (1982). The placement of Sec. 1206(e)(1)(D) within Title 5, its enactment as part of the CSRA, and its bearing on civil servants demonstrate that Sec. 1206(e)(1)(D) is a civil service law.
 
 
 10
 The second additional issue is whether the Director of the OPM can petition for judicial review of a final decision or order of the MSPB under Sec. 7703(d) where the MSPB issued the decision under its original jurisdiction. Both the plain reading of Sec. 7703(d) and the legislative history support the conclusion that the Director may petition for review regardless of whether the MSPB's jurisdiction is original or appellate.
 
 
 11
 In Frazier v. Merit Systems Protection Board, 672 F.2d 150 (D.C.Cir.1982), the court adopted the literal and broad meaning of the provision of 5 U.S.C. Sec. 7703(a)(1) (1982) allowing an employee to appeal a "final order or decision" of the board. Id. at 160. The court in Frazier rejected the board's argument that there are limitations on the availability of the section 7703(a)(1) appeal by an employee. Id. The analysis in Frazier is helpful to us in that the language involved in section 7703(a)(1) allowing an employee judicial review of a "final order or decision of the Merit Systems Protection Board" is the same as that in section 7703(d) concerning the right of the Director to petition for review of any "final order or decision" of the board. 5 U.S.C. Sec. 7703(d).
 
 
 12
 In the absence of any reference in the legislative history to a limitation on the authority of the OPM to appeal, and in light of the clarity of the language in section 7703(d) and the absence of conflict with other provisions, we decline to limit the appellate authority of the OPM.
 
 
 13
 B. Authority of the Office of the Special Counsel
 
 1. General
 
 14
 After careful consideration of the legislative history and the related sections of the CSRA, we disagree with the board and conclude as a matter of law that the OSC does not have authority under section 1206(e)(1)(D) to bring a general disciplinary action such as the present case simply because it can be said to be an activity prohibited by any civil service law, rule or regulation.
 
 
 15
 The board, in reaching the conclusion that the OSC has authority over any violations of the civil service laws, noted the statutory limitations on the exercise of the OSC's authority. The board in this regard cited section 1206(e)(2) which states that:
 
 
 16
 [t]he Special Counsel shall make no investigation of any allegation of any prohibited activity referred to in paragraph (1)(D) or (1)(E) of this subsection if the Special Counsel determines that the allegation may be resolved more appropriately under an administrative appeals procedure.
 
 
 17
 5 U.S.C. Sec. 1206(e)(2) (1982). The board also noted that it would have the authority and jurisdiction to dismiss an action by the OSC if the board should find that the action would be more appropriately taken by an agency.
 
 
 18
 We do not decide whether the board would have that authority, but conclude the board's emphasis on the limiting provision in the statute is misdirected. By addressing the limitations, the board necessarily assumed that the OSC has broad powers of investigation and prosecution of the conduct at issue. The proper inquiry presented by this case should instead be directed to determining what authority is conveyed by section 1206(e)(1)(D) to the OSC, not whether a presumed broad authority is circumscribed by other provisions.
 
 
 19
 Prior to beginning our analysis of the statute, we note also that, contrary to the assertion of OPM, the question of the breadth of the OSC's authority under section 1206(e)(1)(D) has not been decided by the District of Columbia Circuit in either Wren v. Merit Systems Protection Board, 681 F.2d 867 (D.C.Cir.1982) (holding that the option for the OSC to defer to an agency under section 1206(e)(2) does not apply to a section 1206(a) investigation of whistleblower allegations) or Frazier v. Merit Systems Protection Board, 672 F.2d 150 (D.C.Cir.1982) (interpreting corrective provisions of the CSRA). In Wren, the court, in considering the procedural requirements under the CSRA when the OSC terminates an investigation, stated the following:
 
 
 20
 The semi-autonomous nature of the OSC ... was deemed necessary to allow it to fulfill its investigative and prosecutorial functions--to investigate illegal employment practices and seek their correction before the MSPB.
 
 
 21
 Wren, 681 F.2d at 873. The appellate court's analysis in Wren is consistent with our conclusion. More important, the question of the scope of the authority of the OSC was not at issue in that case.
 
 
 22
 In Frazier, the court considered, inter alia, whether the OSC is a "public defender" for individual federal employees in whistleblowing claims or whether the OSC is to act independently of employees' claims as a "watchdog" or "ombudsman" for the merit systems principles. Frazier, 672 F.2d at 162-63. The court in Frazier did not, however, address the issue of whether the OSC's authority extends beyond investigation of merit system or Hatch Act abuses. Therefore, OSC's power to bring general disciplinary actions remains a matter of first impression.
 
 2. The Statute
 
 23
 On the question of what authority section 1206(e)(1)(D) grants to the OSC, the board and the OSC suggest that the meaning of that section is clear. Where the words of a statutory provision are clear and the provision is internally consistent with the remainder of the statute, we agree that preference must be given to the plain meaning of the statute.[2] In the situation at hand, however, where other provisions of the statute raise significant questions about the plain meaning of the subsection, it is necessary to analyze the statute as a whole and to consult the legislative history.[3] As our predecessor court has stated, "[i]n the process of drafting a comprehensive scheme of reform, Congress failed to address specifically how the mechanics of the act [CSRA] would function in certain situations," and the judicial task is to " 'look to the provisions of the whole law, and to its object and policy [in order to interpret the passage at issue].' " Meyer v. Department of Health and Human Services, 666 F.2d 540, 542 (Ct.Cl.1981) quoting Richards v. United States, 369 U.S. 1, 11, 82 S.Ct. 585, 592, 7 L.Ed.2d 492 (1962).
 
 
 24
 The duties and responsibilities of the OSC are primarily contained in section 1206. A review of this entire section reveals that Congress provided very specific areas of responsibility and outlined the authority of the OSC within these areas with some precision. A very broad and general interpretation of section 1206(e)(1)(D) would render many of these provisions meaningless and would be inconsistent with the statutory scheme as a whole. Section 1206(e)(1) in subparagraphs (A) through (C) and (E) delineates authority for the OSC in very specific areas. Subparagraphs (A) and (B) give OSC authority to investigate Hatch Act violations; subparagraph (C) provides similar authority for arbitrary withholding of FOIA information; and subparagraph (E) authorizes OSC to investigate certain prohibited discrimination practices that occur in the course of any personnel action.
 
 
 25
 If we were to construe subparagraph (D) broadly, it would be incompatible with the narrow authority granted by the other subparagraphs of that section and in fact would encompass the authority granted in the other subparagraphs, thereby rendering the additional provisions superfluous. In addition, a broad view of subparagraph (D) would be inconsistent with other provisions of section 1206 that specifically establish authority for the OSC to investigate prohibited personnel practices, 5 U.S.C. Sec. 1206(a)(1), (c)(1) and (c)(2)(B), but otherwise limit OSC to a supervisory or referral role. 5 U.S.C. Sec. 1206(c)(2)(A) and (c)(3).
 
 
 26
 With regard to the former sections, the authority granted to investigate prohibited personnel practices, such as those covered by 5 U.S.C. Sec. 2302, would be duplicated by a literal construction of section 1206(e)(1)(D). As to the latter, the limited referral and supervisory functions of OSC would be overridden by an expansive interpretation of section 1206(e)(1)(D) that permitted OSC to investigate and prosecute violations of any of the civil service laws. Thus, if the OSC discovers, during the course of an investigation, misconduct that is criminal in nature, it must refer such matters to the Attorney General and the agency head, Sec. 1206(c)(2)(A), and the OSC can continue to investigate such criminal conduct only if it relates to a prohibited personnel practice, Sec. 1206(c)(2)(B). With respect to any disclosed violation of law that is neither criminal nor a prohibited personnel practice, section 1206(c)(3) requires the OSC to refer it to the agency head and monitor the agency's action. It is also required to prepare a public listing of such noncriminal matters. Section 1206(d). Were we to adopt the OSC's position, each of these subsections would become meaningless as the OSC would have authority to conduct its own investigation into each of these matters.
 
 
 27
 The overall structure of section 1206 is detailed and specific. This specificity in itself is evidence that section 1206(e)(1)(D) should not be given a literal construction such that it broadly overrides or makes redundant other provisions, particularly those within the same section of the statute. It is a well-established rule of statutory interpretation that a statute should not be interpreted so as to render one part inoperative. Colautti v. Franklin, 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979); but cf. Richards v. United States, 369 U.S. at 11, 82 S.Ct. at 592 ("[w]e believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act...."). The board's construction of section 1206(e)(1)(D) is in error when viewed as a part of the other provisions of section 1206 in that it renders several of the subparagraphs of section 1206 superfluous. We cannot, therefore, accept the OSC's suggestion that we need not look beyond the words of the sentence in section 1206(e)(1)(D).
 
 
 28
 Before considering the legislative history, we note the general introductory paragraph of section 1206 which sets out the role of the Special Counsel:
 
 
 29
 The Special Counsel shall receive any allegation of a prohibited personnel practice and shall investigate the allegation to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken (emphasis supplied).
 
 
 30
 5 U.S.C. Sec. 1206(a)(1) (1982). This passage introducing the section on the responsibilities of the OSC refers only to any prohibited personnel practices. It does not state that the OSC has authority broadly to investigate and prosecute any violation of the civil service laws.
 
 3. The Legislative History
 
 31
 The legislative history of the CSRA indicates with uniformity that the authority of the OSC is limited to investigation of prohibited personnel practices, Hatch Act violations, and arbitrary withholding of FOIA information. President Carter, in his introduction to the proposed CSRA, described the office of the Special Counsel as follows:
 
 
 32
 I also propose to create a Special Counsel to the Board ... who will investigate and prosecute political abuses and merit systems violations. This will help safeguard the rights of Federal employees who "blow the whistle" on violations of laws or regulations by other employees, including their supervisors.
 
 
 33
 H.R.Rep. No. 1403, 95th Cong., 2d Sess., at 100, reprinted in House Committee on Post Office and Civil Service, Legislative History of the Civil Service Reform Act of 1978 at 638, 737 (1979) (hereinafter Legislative History ). President Carter's design for the office of the OSC is reflected throughout the explanatory sections of the legislative history. The House Report, explaining the legislation, states:
 
 
 34
 The Office of the Special Counsel in the Merit Systems Protection Board is a new position designed to ensure that employees are fairly protected. The Special Counsel is vested with specific authority to investigate any allegation of a prohibited personnel practice....
 
 
 35
 The Special Counsel has specific authority to investigate violations of the Hatch Act and to bring actions against employees who have engaged in prohibited personnel practices.
 
 
 36
 H.R.Rep. No. 1403, 95 Cong., 2d Sess., at 6-7, reprinted in Legislative History at 643-44.
 
 
 37
 The detailed section-by-section review of the proposed H.R. 11280 clearly provides that section 1206 authority does not extend to any and all violations of the civil service laws:
 
 
 38
 The new section 1206(e) authorizes the Special Counsel to investigate allegations of violations of the Hatch Act and certain other special matters. (Emphasis supplied.)
 
 
 39
 H.R.Rep. No. 1403, 95th Cong., 2d Sess., at 20, reprinted in Legislative History at 657. It is important to note that section 1206(e)(1) remained unchanged from the time this explanation was provided. This reference to "special matters" provides a clear indication that Congress did not intend section 1206(e)(1) to be a catch-all provision giving the OSC unrestricted authority to investigate all violations of law by civil servants.
 
 
 40
 The Senate Report also indicates that the role of the OSC is to protect the integrity of the merit system. As the Senate Report explained:
 
 
 41
 The Special Counsel should not passively await employee complaints, but rather, vigorously pursue merit system abuses on a systematic basis. He should seek action by the Merit Board to eliminate both individual instances of merit abuse and patterns of prohibited personnel practices.
 
 
 42
 S.Rep. No. 969, 95th Cong., 2d Sess., at 32 (1978), reprinted in Legislative History at 1496 (1979), U.S.Code Cong. & Admin.News 1978, pp. 2723, 2754.
 
 
 43
 The specificity of the Conference Report on the compromise also supports the view that the authority of the OSC is specific, not general. The Conference report describes in detail the duties of the OSC as investigation of prohibited personnel practices; receipt and transfer of employee complaints of personnel practice illegality or impropriety; investigation of patterns of prohibited personnel practices; and investigation of arbitrary and capricious withholding of information. H.R.Conf.Rep. No. 1717, 95th Cong., 2d Sess., at 134-137 (1978), reprinted in Legislative History at 1976-79, U.S.Code Cong. & Admin.News 1978, p. 2723.
 
 
 44
 The Conference Report also explains that the Conference adopted the House version of section 1206(e), which contained the language of section 1206(e)(1)(D) absent from the Senate version, for reasons entirely distinct from the issue of the breadth of the OSC's authority under section 1206(e)(1)(D). The Conference Report explanation focuses entirely on various matters concerning the authority of the OSC in cases involving the arbitrary or capricious withholding of information. See H.R.Conf.Rep. No. 1717, 95th Cong., 2d Sess., at 136-137, reprinted in Legislative History at 1978-79. There is no indication in the Conference Report or the House Report that the Special Counsel was being given broad powers of investigation.
 
 
 45
 It is highly unlikely that Congress would have made a significant expansion in the authority of the Special Counsel without mentioning it in either the Conference or House reports, particularly because such an expansion would have made the more specific portions of the statute regarding the Special Counsel's authority superfluous.[4]
 
 
 46
 We therefore disagree with the board's conclusion that the adoption in Conference of the House version of section 1206(e)(1)(D) is conclusive evidence of congressional intent to convey broad authority to the OSC. We also disagree with the board's conclusion that the provisions allowing the OSC to investigate Hatch Act and FOIA violations open the door for authority over any misconduct, even that not involving personnel practices.
 
 
 47
 Although the legislative history and statutory language setting forth the OSC's duties and responsibilities demonstrate that the OSC does not have broad authority to investigate and institute a general disciplinary action, it is less clear what meaning and scope should be ascribed to section 1206(e)(1)(D). There is, of course, a reference to political activity in the illustrative clause of that section ("including any activity relating to political intrusion in personnel decisionmaking; ....").
 
 
 48
 The current language of section 1206(e)(1)(D) emerged from a rewriting at a mark-up session of the section originally introduced in the House. The original language of this subsection was as follows:
 
 
 49
 (D) such personnel practices as are prohibited by the civil service rules and regulations, including such practices relating to political intrusion in personnel decisionmaking; * * * (emphasis supplied).
 
 
 50
 H.R. 11280, 95th Cong., 2d Sess. (1978). At the mark-up session the emphasized part of the sentence was revised to the current wording "activities." See supra note 1.
 
 
 51
 While the change would indicate a broadening of the provision, there is an absence of any statement in the history that would indicate that the provision was being expanded or that this was a substantive change in any respect. With no explanation of this rewriting or indication of how a more expansive provision would fit with the other provisions of section 1206, we can only conclude that this was not meant to be a substantive change. Thus, we conclude that "activities" in this context was intended to be no more than a substitution for "personnel practices." This portion of the sentence as we interpret it supplements the authority already provided to the OSC in section 1206 to deal with "prohibited personnel practices," which are set out in detail and defined in section 2302 because it provides the OSC with authority to investigate other personnel practices that may be prohibited by "any civil service law, rule, or regulation." The second half of the sentence stands as specific new authority within section 1206(e)(1). Therefore, subparagraph 1206(e)(1)(D) is not made inoperative by this interpretation.
 
 
 52
 As this court noted in Meyer, Congress, in drafting the CSRA, did not address "the mechanics" of how the CSRA would function in certain situations. Meyer, 666 F.2d at 542. In the case at hand, as in Meyer, Congress, in enacting a complex statute, failed to detect inconsistencies in the CSRA. Although it would be preferable for Congress to resolve such inconsistencies, when they must be addressed by the courts, it is the duty of the courts to avoid absurd results.[5]
 
 
 53
 In view of the language of the statute and the relevant legislative history, we conclude that the board was incorrect as a matter of law in deciding that the OSC had authority to investigate and proceed against Williams because his improper conduct did not constitute a prohibited personnel practice nor did it fall within any of the enumerated practices in section 1206(e)(1)(A-E).
 
 CONCLUSION
 
 54
 We vacate the orders of the board dismissing Count I and removing Williams from the SES and fining him pursuant to the board's adoption of the settlement agreement on Count II. We remand with instruction to dismiss for lack of jurisdiction on the grounds that the OSC did not have authority to bring the disciplinary action against Williams or to enter into an agreement settling that action.
 
 
 55
 VACATED AND REMANDED.
 
 
 
 [1]
 The resolution of this question requires consideration of all provisions of section 1206(e)(1), which read as follows:
 (e)(1) In addition to the authority otherwise provided in this section, the Special Counsel shall, except as provided in paragraph (2) of this subsection, conduct an investigation of any allegation concerning--
 (A) political activity prohibited under subchapter III of chapter 73 of this title, relating to political activities by Federal employees;
 (B) political activity prohibited under chapter 15 of this title, relating to political activities by certain State and local officers and employees;
 (C) arbitrary or capricious withholding of information prohibited under section 552 of this title, except that the Special Counsel shall make no investigation under this subsection of any withholding of foreign intelligence or counterintelligence information the disclosure of which is specifically prohibited by law or by Executive order;
 (D) activities prohibited by any civil service law, rule, or regulation, including any activity relating to political intrusion in personnel decisionmaking;
 (E) involvement by any employee in any prohibited discrimination found by any court or appropriate administrative authority to have occurred in the course of any personnel action.
 5 U.S.C. Sec. 1206(e)(1) (1982).
 Section 1206(g) reads in pertinent part:
 (g)(1) If the Special Counsel determines that disciplinary action should be taken against any employee--
 (A) after any investigation under this section, or
 (B) on the basis of any knowing and willful refusal or failure by an employee to comply with an order of the Merit Systems Protection Board,
 the Special Counsel shall prepare a written complaint against the employee containing his determination, together with a statement of supporting facts, and present the complaint and statement to the employee and the Merit Systems Protection Board in accordance with section 1207 of this title.
 5 U.S.C. Sec. 1206(g)(1) (1982).
 
 
 [2]
 See Consumer Product Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) (if the statutory language is unambiguous, in the absence of "a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive"); Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917) ("[i]t is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed...." (citations omitted)). Reid v. Department of Commerce, 793 F.2d 277, 281 (Fed.Cir.1986); Darsigny v. OPM, 787 F.2d 1555 (Fed.Cir.1986)
 
 
 [3]
 See United States v. Turkette, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) ("[i]n determining the scope of a statute ... internal inconsistencies in the statute must be dealt with." (citations omitted)); Texas State Comm'n for the Blind v. United States, 796 F.2d 400, 406 (Fed.Cir.1986) (in banc ) (even where a statute is clear on a purely linguistic level, interpretation may be necessary)
 
 
 [4]
 See Lindahl v. Office of Personnel Management, 470 U.S. 768, 787, 105 S.Ct. 1620, 1631, 84 L.Ed.2d 674 (1985) ("[i]f Congress intended [to make major changes in the mental disability cases under the 1980 amendment to 5 U.S.C. Sec. 8347], there would presumably be some indication in the legislative history to this effect")
 
 
 [5]
 See Jennings v. United States, 168 F.Supp. 781, 785 (Ct.Cl.1958) ("[I]t is the duty of the courts to give intent to the acts of Congress which do not result in an absurdity")