**Wilson C. SCHRAMM, Appellant,**

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent,**

**Merit Systems Protection Board, Intervenor.**

**No. 81–2144.**

United States Court of Appeals, Third Circuit.

Argued June 14, 1982.

Decided June 28, 1982.

Charles A. Hobbie, (argued), Staff Counsel, James R. Rosa, Gen. Counsel, American Federation of Government Employees, AFL–CIO, Washington, D. C., for petitioner.

W. Hunt Dumont, U. S. Atty., Anne C. Singer, Asst. U. S. Atty., Newark, N. J., Connie A. Raffa, Asst. Regional Atty., Dept. of Health & Human Services, Washington, D. C., for respondent.

Evangeline W. Swift, Mary M. Jennings, Kathleen D. Koch (argued), Merit Systems Protection Bd., Washington, D. C., for intervenor.

Before ALDISERT, GIBBONS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Wilson C. Schramm, an employee of the Social Security Administration, petitions the Court of Appeals for review of a final order of the Merit Systems Protection Board (MSPB), entered on June 19, 1981, which affirmed a decision of the Social Security Administration, Department of Health and Human Services (SSA), denying Schramm his within grade pay increase as of July 19, 1979.[1] Schramm contends that

1. The Court of Appeals has jurisdiction pursuant to 5 U.S.C. § 7703 (1976), which provides: Judicial Review of Decisions of the Merit Systems Protection Board

(a)(1) Any employee ... adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may

the MSPB applied the wrong standard of review by holding that the SSA decision that Schramm failed to perform the essential requirements of his position at an acceptable level of competence need only be supported by substantial evidence. We reverse the MSPB order and hold that an agency must justify its decision to deny a within grade pay increase by a preponderance of the evidence.

## I.

Schramm is employed with the SSA as a claims representative at its District Office in Paterson, New Jersey. He was first appointed to the position as a trainee, GS–5, in May 1977. After leaving the training pool, Schramm was assigned to the Paterson Office and in June 1978, he received a career-ladder promotion to GS–7.

Late in 1978, SSA reorganized the claims representative position into specialties and Schramm became a claims representative specialist for Title XVI claims. Under 5 U.S.C. § 5335(a), Schramm was entitled to receive a within grade step increase to GS–7, Step 2 on June 2, 1979, provided his performance was of an acceptable level of competence.[2]

On April 5 and April 25, 1979 Schramm's first line supervisor, Ms. Vera Porter, sent him memorandums criticizing certain aspects of his job performance, including demeanor while interviewing claimants, difficulty with technical aspects of development of claims folders and lack of desk organization, and proposing to withhold his within grade salary increase effective June 2, 1979, at the end of his 12 month waiting period. On May 21, 1979, Ms. Porter sent Schramm another memo informing him that she had decided to withhold his salary increase for the deficiencies in his work performance.

Because Schramm was not given 60 days notice of the deficiencies in his performance, as required by 5 C.F.R. § 531.-407(b)(2)(1978) (superceded),[3] Ms. Porter, in a memo dated June 4, 1979, gave Schramm until August 2, 1979 to meet an acceptable level of competence. Pursuant to § 531.-407(d)(1978)(superceded), Schramm sought

obtain judicial review of the order or decision.

> (b)(1) ... a petition to review a final order or final decision of the Board shall be filed in the Court of Claims or a United States court of appeals...

28 U.S.C. § 2342 (Supp.1982) provides:

> The Court of Appeals has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—

> (6) all final orders of the Merit Systems Protection Board except as provided for in section 7703(b) of Title 5.

As of October 1, 1982, the Court of Appeals will no longer have jurisdiction over final orders of the Merit Systems Protection Board. Federal Court Improvement Act of 1982, P.L. 97–164, 50 L.W. 77, 81 (to be codified at 28 U.S.C. § 1295(a)(9)) (vesting exclusive jurisdiction in the newly created Court of Appeals for the Federal Circuit).

**2.** 5 U.S.C. § 5335(a) provides:

> An employee paid on an annual basis, and occupying a permanent position within the scope of the General Schedule, who has not reached the maximum rate of pay for the grade in which his position is placed, shall be advanced in pay successively to the next higher rate within the grade at the beginning of the next pay period following the comple-

tion of—(1) each 52 calendar weeks of service in pay rates 1, 2, and 3;

> subject to the following conditions:

> (B) The work of the employee ... is of an acceptable level of competence as determined by the head of the agency.

**3.** 5 C.F.R. § 531.407(b)(2) (1978) provided:

> (b) An agency shall establish procedures that ensure:

> (2) That at least 60 days in advance of the date on which an employee will complete his waiting period, his supervisor shall inform him of any factor that raises a question about the employee's work being of an acceptable level of competence.

If the employee is not notified a full 60 days in advance, the agency can withhold the increase, but must allow the employee 60 days after the end of his 12 month waiting period to improve his job performance. 5 C.F.R. § 531.-407(c)(5). After the 60 days has expired, the agency makes a redetermination, and if the employee is entitled to the increase, it is awarded retroactively. § 531.407(f). If not, then the employee is entitled to appeal the negative redetermination.

reconsideration of SSA's decision, and Ms. Porter in a memo dated July 19, 1979, citing "procedural error," again gave Schramm until August 2, 1979 to improve his work performance.

Schramm again sought reconsideration, and on March 18, 1980, the SSA sustained the negative determination of his performance. Thereupon, Schramm appealed to the MSPB,[4] which vacated the agency's reconsideration decision on the grounds of procedural error and remanded the case to the SSA for a new decision.[5] The SSA issued a second reconsideration decision on November 20, 1980, sustaining the negative determination. Schramm again appealed to the MSPB, a hearing was held, and on June 19, 1981, the MSPB affirmed the agency's reconsideration decision. On July 17, 1981, Schramm filed this petition for review.

## II.

The sole issue presented in this petition is the standard by which agency decisions to deny within grade pay increases because of an employee's substandard performance must be reviewed. The resolution of this issue, because of an ambiguity in the Civil Service Reform Act of 1978, 5 U.S.C. § 1101 *et seq.*, presents a novel and difficult question of statutory construction.

## A.

■ "[T]he starting point in every case involving construction of a statute is the language itself." *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978), *quoting, Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). Under § 7701(c)(1) of the Civil Service Reform Act (the Act), two different standards are applied in MSPB review of agency personnel decisions:

(c)(1) . . . the decision of the agency shall be sustained . . . only if the agency's decision—

(A) in the case of an action based on unacceptable performance described in section 4303 of this title, is supported by substantial evidence, or

(B) in any other case, is supported by a preponderance of the evidence.

5 U.S.C. § 7701(c)(1). Section 4303, to which paragraph (A) refers, provides that an agency may "reduce in grade or remove an employee for unacceptable performance."[6] The plain language of § 7701(c)(1) suggests that Congress intended the MSPB to review adverse personnel decisions resulting in reductions in grade or demotion by the substantial evidence standard, since they are the only actions described in § 4303, and that every other case must be reviewed by the higher standard prescribed in § 7701(c)(1)(B).

In Schramm's appeal, however, the MSPB declined to follow the plain language of § 7701(c)(1) and decided that an agency decision to withhold a within grade pay in-

---

**4.** The Civil Service Reform Act reorganized the Civil Service Commission into the Merit Systems Protection Board and the Office of Personnel Management. The Board assumed the adjudication and prosecution responsibilities of the Civil Service Commission, while the Office of Personnel Management took over the Commission's managerial role. *See* 5 U.S.C. §§ 1103–1104 & 1205 (Supp.1978).

**5.** In Schramm's appeal, he argued that Ms. Porter's July 19 notice was a premature redetermination, see note 3 *supra*, and that the agency had wrongfully lengthened his waiting period to include the 60 day notice period, therefore violating § 531.407(c)(iii), which required an agency to base its assessment of an employee's performance on the one year waiting period alone.

The Merit Systems Protection Board disagreed, and found that Ms. Porter's July 19, 1979 memo was a late substitute for the first negative determination rather than a premature redetermination.

The MSPB found a harmful procedural error, however, in that the same SSA official who performed the reconsideration process also reassigned Schramm to the Lodi, New Jersey District Office. *Wilson C. Schramm v. Department of Health and Human Services*, MSPB Dkt. No. NY 531DO9024 (Aug. 13, 1980).

**6.** 5 U.S.C. § 4301(3) defines unacceptable performance as "performance of an employee which fails to meet established performance standards in one or more critical elements of such employee's position."

crease due an employee pursuant to 5 U.S.C. § 5335 fell within the standard of review of § 7701(c)(1)(A) rather than (B). *Schramm v. Department of Health and Human Services*, MSPB No. NY531 D8110079 (June 19, 1981). Schramm contends that the MSPB erred in so deciding, and urges that since decisions to withhold pay increases are not "described by § 4303" the agency's burden of proof should have been a preponderance of the evidence. The SSA argues that Congress intended to apply the substantial evidence test to all appeals from adverse action based on an employee's performance, including denials of within grade pay increases.

The legislative history reveals a substantial ambiguity in the standard of review Congress meant to be applied in cases such as Schramm's. In the face of that ambiguity, we decline to rewrite the plain language of the Act, and hold that § 7701(c)(1) must be given its literal meaning.

### B.

The Act, labeled this century's most comprehensive reform of the Federal work force, was enacted in part to make uniform and codify merit system principles and to streamline personnel processes within the Federal government. *See* S.Rep.No.95–969, 95th Cong. 2d Sess. 2, *reprinted in* 1978 U.S.Code Cong. & Admin.News 2723, 2724 (Senate Report). The legislative history reveals that Congress intended to overhaul the procedures governing review by the MSPB and the federal courts of negative employment actions, and to accord greater procedural protection to an employee's rights, while at the same time giving agencies greater ability to remove or otherwise discipline employees who engage in misconduct or whose work performance is unacceptable. Senate Report at 51.

Under the law prior to the 1978 reforms, the Civil Service Commission and the courts reversed an agency decision to withhold a pay increase only if the agency action was arbitrary or capricious or if the agency failed to follow the Commission's regulations.[7] By contrast, however, in the case of an employee's removal or reduction in grade prior to the Act, an agency had to prove by a preponderance of the evidence that the action would improve the efficiency of the service. *See* Senate Report at 43, 54. Because of the difficulty inherent in such a standard, and particularly because of the "widely held impression ... that a government employee cannot be fired, regardless of unacceptable conduct or work performance," Senate Report at 9 U.S.Code Cong. & Admin.News 1978, p. 2731, Congress relieved the agencies of the difficulty of proving unacceptable work performance by a preponderance of the evidence.

As in the case of the standards governing appeals from actions based on unacceptable performance, the bill changes the applicable standards to avoid unnecessary reversal of agency actions because of technical procedural oversights, or because the judgment of the agency is not given sufficient weight. However, the [Senate] Committee [on Governmental Affairs] felt that the agency should have to meet a heavier burden of proof when it sought to take an adverse action against an employee for misconduct than when the action was based on unacceptable performance. In the case of misconduct, the case is more susceptible to the normal kind of evidentiary proof, and the nature of the proceeding is more disciplinary in nature.

Concurrently, when an agency takes adverse action against one of its employees, it must prove by a preponderance of the evidence that the action will promote the efficiency of the service ...

.        .        .        .        .

[I]t is intended that the overall effect of the new standards will be fewer reversals by the Board or the courts of adverse actions taken by the agencies.

Senate Report at 54, U.S.Code Cong. & Admin.News 1978, p. 2777. Thus, § 7701

---

**7.** *See Meyer v. Dep't of Health and Human Services*, 666 F.2d 540, 543 (Ct.Cl.1981); *Parker v. Defense Logistics Agency*, 1 MSPB 489, slip op. at 15–16 (1980). *See also Ruderer v.*

*United States*, 412 F.2d 1285, 1288, 188 Ct.Cl. 456 (1969), *cert. denied*, 398 U.S. 914, 90 S.Ct. 1716, 26 L.Ed.2d 77 (1970).

prescribes a substantial evidence standard for unacceptable conduct removals or reductions in grade, and a higher standard for misconduct cases.

The legislative history is replete with similar references to the lesser standard to be applied in performance related cases. For example, the joint explanatory statement of the House and Senate conference committee contains the following statement:

> The conferees agreed ... that in performance cases a lower standard of proof should be required because of the difficulty of proving that an employee's performance is unacceptable. The conference substitute therefore provides that an agency's decision in performance cases shall be upheld if its action is supported by substantial evidence in the record before the MSPB. The substantial evidence test was adopted both because it is clearly a lower standard than now used in performance cases and because it is a generally understood term in administrative law.

H.Conf.Rep.No. 95–1717, 95th Cong. 2d Sess. 139, *reprinted in* 1978 U.S.Code Cong. & Admin.News 2860, 2872 (Conference Report).[8]

The Court of Claims in *Meyer v. Department of Health and Human Services*, 666 F.2d 540 (Ct.Cl.1981), and the MSPB in *Parker v. Defense Logistics Agency*, 1 MSPB 489 (1980), two cases upon which the SSA relies, interpreted these and similar segments of the legislative history to support their conclusion that, in spite of the unambiguous language of § 7701(c)(1), Congress actually meant to separate all performance-related cases, including those arising under § 5335, from other types of cases and to apply a less burdensome standard of review to the agency.

We decline to follow the approach taken by the Court of Claims and the MSPB,

because we believe these statements in the legislative history, read in context, refer specifically to removals or reductions in grade under § 4303, and not to performance-related cases generally. In both portions of legislative history quoted above, Congress noted its desire to change prior practice to accord greater deference to the judgment of the agency, Senate Report at 54, by adopting a *lower* standard in performance cases than was used under prior law. Conference Report at 139. Clearly, since under prior law denials of within grade pay increases were upheld unless the agency decision was arbitrary, generally understood as the least stringent burden on the agency, the legislative history cannot fairly be read to support the conclusion reached in *Meyer* and *Parker*. Other portions of the legislative history bear out this conclusion. For example, on the floor of the Senate, Senator Percy, a member of the Conference Committee which produced the Act as ultimately passed by Congress, explained the burden of proof provisions contained in the Senate version:

> Two adverse action procedures are established by S.2640, one for actions based on unacceptable performance (incompetence), the other for actions based on other cause (such as misconduct). In either case, the employee would be removable on 30 days notice stating reasons, have the right to respond, be represented by an attorney or other representative, and receive a written decision. Once removed, the employee could appeal the action to the MSPB where an evidentiary hearing would be guaranteed wherever a material issue of fact is in dispute. The difference between the two types of cases is the burden of proof needed to sustain the agency action.

124 Cong.Rec. S14271 (Aug. 24, 1978).

In other respects, the legislative history is ambiguous. In its report on the Senate

---

**8.** This dual standard represented a compromise between the House and Senate. The Senate version of the Act provided for reversal of actions based on unacceptable performance only if the agency could show no reasonable basis for the decision. The Senate would have applied the substantial evidence standard to misconduct cases. A House amendment provided that both actions based on unacceptable performance and on misconduct would be sustained only if the agency action was supported by a preponderance of the evidence. Conference Report at 138.

**90**

version of § 4303, which, like the version finally enacted, applied only to removal and reduction in grade actions, the Senate Committee disregarded the literal language of § 4303 and stated that "[t]he actions *primarily* contemplated are reduction in grade or dismissals from the service." Senate Report at 42 U.S.Code Cong. & Admin.News 1978, p. 2764 (emphasis added). The Senate Report also criticizes the former practice of awarding "almost automatic pay increases for all employees." *Id.* at 3, U.S.Code Cong. & Admin.News 1978, p. 2724. Finally, of course, the legislative history to both §§ 4303 and 7701, describes the different burdens of proof as applicable to "performance" and "misconduct" cases without clarifying whether it confines itself solely to demotions or removals. *E.g.*, Senate Report at 44, 54–55; Conference Report at 139.

Congress was certainly aware of the difference between reduction in grade or removal actions against employees, and actions to withhold pay increases, however, for in § 4303, Congress provided an employee facing the more serious of these measures with numerous procedural protections against arbitrary decisions by agencies. Section 4303(b)(1)(A) provides that an employee must be given 30 days advance written notice of any proposed action under that section, specifying the critical elements of the employee's position in which his performance is unacceptable and specific instances of substandard performance. The employee is also entitled to review of the

agency decision by an employee higher than the employee who proposed the action, a written decision by the agency and representation by an attorney throughout the proceedings. § 4303(c)(1)(B)–(D). The procedural protections in § 4303 are more specific and stringent than those provided an employee under § 5335, which provides:

> When a determination is made under ... this section that the work of an employee is not of an acceptable level of competence, the employee is entitled to prompt written notice of that determination and an opportunity for reconsideration of the determination within his agency under uniform procedures prescribed by the Office of Personnel Management. If the determination is affirmed on reconsideration, the employee is entitled to appeal to the Merit Systems Protection Board.... [9]

5 U.S.C. § 5335(c). Clearly, Congress did not intend to treat alike all adverse actions against employees based on inefficiency or incompetence.[10]

In the face of patent ambiguity in the legislative history and an obvious statutory distinction between actions based on § 4303 and § 5335, we decline to attribute to Congress an unexpressed intention to treat demotion or removal cases and denials of pay increases alike.[11]

■ We recognize that the result will create an anomoly in the standards of review applied in different types of perform-

---

**9.** By regulation, the Office of Personnel Management adopted additional procedural requirements which an agency must follow in denying a within grade pay increase which are similar to those created by statute for § 4303 actions. See 5 C.F.R. §§ 531.408 et seq.

**10.** In addition, the statutory language of § 4303 used the term "unacceptable *performance*" while § 5335 speaks of "acceptable level of *competence*." While we do not perceive a vast substantive distinction between the two terms, *cf.*, 5 C.F.R. § 531.403 (1982) (incorporating "unacceptable performance" definition into regulation defining "acceptance level of competence"), we can presume that the use of different terminology within a body of legislation is evidence of an intentional differentiation.

*Lankford v. Law Enforcement Assistance Administration*, 620 F.2d 35 (4th Cir. 1980).

**11.** We do not consider the decision of the MSPB in *Parker v. Defense Logistics Agency*, *supra*, an administrative interpretation of the Act to which we should afford a high degree of deference. This appeal involves "a narrow legal issue that is readily susceptible of judicial resolution" and we are not faced with "a situation in which there has been longstanding contemporaneous administrative construction upon which those subject to the jurisdiction of the agency would have been likely to rely." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 120, 100 S.Ct. 2051, 2062, 64 L.Ed.2d 766 (1980).

ance cases.[12] Agencies withholding scheduled salary increases for incompetence will have to meet a preponderance of the evidence standard, while the more severe action of demoting or terminating an employee for basically the same reason will only have to be justified by substantial evidence. We are not free, however, to rewrite the statute to administer the Federal workforce as we see fit. Where Congress in plain language has expressed its intention, and the legislative history does not demonstrate a contrary purpose, we are bound to follow the statutory provisions as written. The agency's remedy must lie with Congress, and not with the MSPB or the Courts.

### III.

Accordingly, the decision of the MSPB will be reversed and the case remanded for a new hearing.

---

**12.** Although we find it unnecessary to decide the issue, the result reached by the MSPB could create an even greater anomoly. There is some authority to support Schramm's position that the substantial evidence standard of § 7701(c)(1)(A) is appropriate to review agency actions based on unacceptable performance only if those actions are taken by an agency pursuant to a formal system of established performance standards created under § 4302. In *Wells v. Harris*, 1 MSPB 199 (1979), the MSPB held that the term "unacceptable performance" as used in the Act is limited to performance found substandard pursuant to appraisal systems established under 5 U.S.C. § 4302 and approved by the Office of Personnel Management under 5 U.S.C. § 4304. If the agency has no appraisal system in operation at the time of a demotion or removal, according to the MSPB in *Wells*, the agency must justify its action under the preponderance of the evidence standard applied to 5 U.S.C. § 7513(a), which provides:

(a) Under regulations prescribed by the Office of Personnel Management, an agency must take an action . . . against an employee only for such cause as will promote the efficiency of the service.

Since the SSA did not withhold Schramm's pay increase pursuant to an approved performance appraisal system, there is some force to the argument that the action against him would have to be justified by a preponderance of the evidence.

Then, according to this construction, when the SSA adopted its performance appraisal system, withheld pay increase cases would fall within the substantial evidence standard of review. Treating such post-Act but pre-appraisal system cases in this fashion would have the result of increasing the burden of proof in pay increase cases from the pre-Act arbitrary standard to a preponderance standard and then reducing the burden to the substantial evidence standard after adoption of an appraisal system. To avoid such a bizarre result, the Court of Claims in *Meyers v. Department of Health and Human Services, supra,* and the MSPB in *Parker v. Defense Logistics Agency, supra,* after construing § 7701(c)(1)(A) as including pay increase denials, decided that the substantial evidence test applied even in the absence of an approved appraisal system. Since we decide this petition for review on other grounds, we express no view as to the merits of this approach.