**John H.M. CHEN, Petitioner,**

**v.**

**GENERAL ACCOUNTING OFFICE, Respondent.**

**No. 86–1405.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 6, 1987.

Decided June 26, 1987.

Zachary D. Fasman, Washington, D.C., with whom Frederick W. Claybrook, Jr., was on brief for petitioner.

Scott D. Earnshaw, Atty., Dept. of Justice, Washington, D.C., with whom Richard K. Willard, Asst. Atty. Gen., and William Kanter, Atty., Dept. of Justice, were on brief, for respondent.

Before WALD, Chief Judge, MIKVA and BORK, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

Appellant Dr. John H.M. Chen seeks review of a decision of the General Account-

ing Office Personnel Appeals Board (PAB) upholding the GAO's decision to deny Chen's within-grade salary increase and to fire him from his position as a Training Evaluation Specialist at the Office of Organization and Human Development (OOHD). Chen asserts that his supervisors retaliated against him for his earlier successful EEO complaint, while the agency claims that Chen was simply not performing up to standards. A single member of the PAB rendered the initial decision on Chen's retaliation claim and ordered his reinstatement after concluding that GAO's actions against Chen were retaliatory and their allegations of substandard performance pretextual. We conclude that the PAB applied the wrong standard of review when it reconsidered and reversed the initial decision of its Presiding Member, necessitating a remand of the record for further consideration.

## I. BACKGROUND

In February 1983, the PAB found that the GAO's refusal to hire Chen despite his extensive qualifications was a discriminatory violation of Title VII of the Civil Rights Act of 1964. The PAB ordered the GAO to hire Chen either as a Training Evaluation Specialist (Series 1701) or as an Education Specialist (Series 1710). In the course of that proceeding at least two significant facts were established: Chen was stipulated to be qualified for the position of education evaluation specialist, and he was found to have a command of the English language adequate for the jobs he had sought.[1]

Chen began working at GAO in July 1983. In January 1984, he was denied a within-grade salary increase.[2] In June 1984 Chen was informed that he was being fired. His performance on three assignments were cited as the basis of Chen's

---

1. During the course of the PAB proceeding, Dr. Steve Medlin testified that the positions that Chen had applied for required oral communication skills; Mr. Arley Franklin, who had interviewed Chen, testified that Chen's speech was not good enough for the job. The hearing officer, however, on the basis of her own observa- tions, found that Chen had an adequate command of English.

2. Chen was eligible for a within-grade increase in January 1984 because the PAB ordered that he be hired with retroactive time in grade.

poor evaluation: 1) a literature search on learning centers; 2) an evaluation plan for the GAO's learning center; and 3) a draft chapter for a GAO publication dealing with the evaluation of special and issue-area courses.[3]

Chen complained to the PAB in February, and again in May, 1984, after he was denied his within-grade salary increase, of discrimination and harrassment; he later amended that complaint to encompass his firing. Chen's case was heard in July 1985 by a single member of the PAB (the "Presiding Member"), pursuant to PAB regulations, 4 C.F.R. § 27.1. In December 1985, the Presiding Member issued a sixty-five page opinion finding that Chen's performance was up to standards, given the nature of the assignments and supervision he had received, and that the GAO denied his salary increase and fired him in retaliation for his earlier EEO complaint. Dec. of the Presiding Member, Joint Appendix ("J.A.") 73–140. The Presiding Member ordered that Chen be reinstated with full back pay, and transferred to some appropriate position out of OOHD. *Id.* at 65, J.A. 139. The GAO petitioned for reconsideration of the Presiding Member's decision by the full PAB. Applying its new reconsideration regulations for the first time, the PAB, on June 19, 1986, reversed the Presiding Member, over his strenuous dissent. PAB Decision, J.A. 4–22; PAB Dissent, J.A. 23–72. On Chen's petition, we now review that decision of the full board.

## II. STANDARD OF REVIEW

A. *Judicial Review of PAB Decisions.*

The PAB's enabling statute sets out a familiar standard of judicial review. Final decisions of the PAB may only be set aside by this court when they are:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law;

(2) not made consistent with required procedures; or

(3) unsupported by substantial evidence.

31 U.S.C. § 755. Although the decision of the Presiding Member constitutes part of the record on appeal, it is the decision of the full board, when it reconsiders the Presiding Member's initial disposition, that is final and subject to judicial review. 4 C.F.R. § 28.25(d).

While the scope of our review remains the same even when a board reverses its hearing officer, *see Dunning v. NASA,* 718 F.2d 1170, 1174 (D.C. Cir.1983),

the evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion.

*Universal Camera Corp. v. NLRB,* 340 U.S. 474, 496, 71 S.Ct. 456, 469, 95 L.Ed. 456 (1951). Moreover, such reversals are normally scrutinized very carefully to ensure there is some reasoned explanation of the board's disagreement with the decision of the hearing officer. *See, e.g., National Ass'n of Recycling Indus, Inc. v. FMC,* 658 F.2d 816, 824–25 (D.C. Cir.1980); *Greater Boston Television Corp. v. F.C.C.,* 444 F.2d 841, 853 (D.C. Cir.1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971). Thus, even if it were otherwise supported by substantial evidence, a board decision that simply ignored the rationale or findings of a hearing officer—especially those based on live testimony not available to the board on reconsideration—would be found to be arbitrary and capricious. *National Ass'n of Recycling Indus.,* 658 F.2d at 825; *see also Jackson v. Veterans Admin.,* 768 F.2d 1325, 1331 (Fed.Cir.1985); *General Dynamics Corp. v. OSHRC,* 599 F.2d 453, 463 (1st Cir.1979). Similarly, a board decision that applied the wrong standard of review to the decision of its hearing examiner would also be arbitrary and capricious and contrary to law.

B. *PAB Review of the Presiding Member's Decision.*

■ Although the PAB nowhere in its decision explicitly states that it is undertak-

---

**3.** Chen was also instructed to do some research on computer-aided instruction, but that project was not due until after he was fired.

ing "de novo review" of the Presiding Member's decision, it is obvious that is what the board did. The PAB noted that Chen's case offered the board its first opportunity pursuant to new regulations, to review a Presiding Member's decision "with regard to whether the record, viewed as a whole, supports the decision." PAB Dec. at 14, J.A. 20. The PAB asserted that its regulations entitled it to "correct any decision which was contrary to the overall weight of the record evidence." *Id.* PAB counsel have acknowledged in their brief that the PAB "interpreted its new review provisions as permitting it to engage in de novo review of the presiding member's opinion." Respondent's Brief at 13. Because we conclude that the PAB lacked such de novo review authority, we vacate the PAB's decision and remand the record for further consideration of the initial decision under the correct standard of review.

1. *PAB Regulations Preclude De Novo Review.*

The PAB is a five-member board appointed by the Comptroller General for three-year terms; its members are removable by a majority of the board only for cause. The PAB's duties include "consider[ing] and order[ing] corrective or disciplinary action" in a variety of personnel matters and prescribing regulations on officer and employee appeals as well as its own operating procedures. 31 U.S.C. § 753 (a), (d). The PAB may delegate its § 753(a) authority to a panel or even to a single member, and the decisions of individual members or panels are deemed final decisions of the PAB "unless the Board reconsiders the decision under subsection (c) of this section." § 753(b). Section 753(c) states that reconsideration may take place on motion of a party or the PAB within 30 days of the individual member's decision.

Although PAB regulations say nothing about what standard of review should govern reconsideration by the PAB of an individual member's decision, 4 C.F.R. § 27.1, section 28.25(c) spells out the conditions under which the full board may reopen, and ultimately reverse, decisions of individual

PAB members. That section, until March 1986, stated in relevant part:

The Board may grant a motion to reopen and reconsider when it is established that:

(1) New and material evidence is available that, despite due diligence, was not available when the record was closed; or

(2) The decision of the Hearing Officer is based on an erroneous interpretation of statute or regulation.

4 C.F.R. § 28.25(c). In March 1986 the PAB revised the regulation by adding three additional subsections:

(3) The decision is arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law;

(4) The decision is not made consistent with required procedures; or

(5) The decision is unsupported by substantial evidence.

4 C.F.R. § 28.25(c), *published at* 51 Fed. Reg. 7739 (March 6, 1986). Chen's was the first case to which the PAB applied these new regulations. PAB Dec. at 14; J.A. 20.

We conclude that the PAB regulations, as amended, preclude the board from exercising de novo review powers over individual board members' decisions.

(a) *Section 28.25(c) Does Not Prescribe De Novo Review.*

Although the PAB majority stated that the new regulations allow the PAB "the first opportunity to correct any decision which was contrary to the overall weight of the record evidence," PAB Dec. at 14; J.A. 20, the plain language of the regulations imposes a considerably narrower scope of review. The new additions to the old regulation mirror familiar language in the APA and the PAB's own organic statute, see 31 U.S.C. § 755, limiting judicial review of agency actions to a substantial evidence standard. Moreover, when the PAB promulgated its new regulations, it noted:

Section 28.25 was amended by adding paragraphs (c)(3) through (c)(5). These subsections *include the statutory bases upon which the courts review the decisions of the Board as bases for recon-*

*sideration by the full Board of a Hearing Officer's decision.*

51 Fed.Reg. at 7735 (emphasis added). It seems clear that the PAB's new regulations give it only "appellate review" powers and not de novo review authority to reopen and review individual member's decisions.

(b) *Section 28.25(c) Does Not Reserve De Novo Review Authority.*

PAB counsel argue that § 28.25(c) *generally* allows the PAB to review a single member's adjudications de novo even if the specific bases listed in (c) (1) through (c)(5) do not; they suggest we ignore the omission of de novo review authority from § 28.25, asserting that the language of the regulation is permissive and does not limit the PAB's reconsideration to those bases listed (i.e., the regulation says the PAB "may" reconsider a case "when" certain conditions apply, rather than "only when" those conditions apply). PAB counsel rely heavily on this court's decision in *Dunning v. NASA*, 718 F.2d 1170, finding that somewhat analogous regulations of the Merit Systems Protection Board ("MSPB") afford authority to reopen cases in situations not specifically listed. In that case, the court confronted a regulation stating that the MSPB "may grant a petition for review when it is established that ...," reciting a set of conditions almost identical to the old PAB regulations. 5 C.F.R. § 1201.115 (1983). Then Judge, now Justice, Scalia concluded that

*any negative implication that might ordinarily arise* [from the language of the regulation] is eliminated by the second following section which provides that "[t]he Board may reopen and reconsider a decision of a presiding official on its own motion at any time, notwithstanding any other provision of this part." 5 C.F.R. § 1201.117.... That provision makes it clear beyond doubt that § 1201.-115 is not a categorical restriction upon

the Board's review authority, but only sets forth the most common situations in which review will ordinarily be entertained. Or to put the point another way: If, in entertaining this appeal, the Board was acting beyond the specified limits of § 1201.115, it was clearly acting within its reserved discretion under § 1201.117.

*Dunning*, 718 F.2d at 1173 (emphasis added). As the quoted language makes clear, the court did not find comprehensive review power implicit in the "permissive" language of the regulations, but rather in the explicit language in § 1201.117, which clearly reserved authority to reconsider at any time, notwithstanding any prior, more specific delineation of the circumstances under which that power could be exercised.

PAB counsel assert repeatedly that we should refer to MSPB regulations to fill any gaps in the PAB regulations because the PAB modelled its regulations largely after those of the MSPB. But even if true,[4] it is irrelevant. The PAB cannot copy some of the MSPB regulations, omit the critical residual authority provision, and then ask us to read the excluded provision back into its own regulations. PAB had the opportunity to adopt a residual authority provision like § 1201.117, but it did not do so. As late as March 1986, when amending the regulations, the PAB could have included authority for de novo review, but it did not. Instead the PAB specifically limited its authority to reconsider an individual member's decisions to the "substantial evidence" standard used by appellate courts to review the PAB itself. 51 Fed. Reg. 7735. Moreover, the PAB decision in this case explicitly relied on the new regulations, not on any implicitly reserved powers, for authority to reconsider the Presiding Member's decision. PAB Dec. at 14, J.A. 20. Thus, any authority for de novo review must be found in subsections (c)(3) to (c)(5) of the regulations, not in the use of

---

4. PAB counsel rely for this assertion on *General Accounting Office v. General Accounting Office Personnel Appeals Board*, 698 F.2d 516 (D.C. Cir.1983). But that case notes only that the *statute* structured the PAB as a hybrid of the MSPB, FLRA and EEOC. It does not say that in interpreting regulations subsequently promulgated by the PAB we should look to MSPB regulations for guidance.

the permissive word "may".[5] Counsel's post-hoc rationalizations are especially unavailing when the agency has so clearly indicated reliance on a different rationale. *See Burlington Truck Lines v. United States,* 371 U.S. 156, 168–69, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962).

#### (c) *Section 28.25 Limits the PAB's Review Authority.*

PAB counsel argue that an agency has inherent power to reconsider the decisions of its individual members, unless it *explicitly* limits that authority, and that the PAB has not done so in § 28.25. We agree that absent regulations to the contrary, the PAB could reconsider on a de novo basis decisions of its Presiding Member. See 31 U.S.C. § 753(b) (authorizing PAB to delegate decisionmaking authority to individual members, but permitting full board to reconsider). But the PAB could also under the same statute clearly limit the scope of its review on reconsideration. 3 K. Davis, *Administrative Law Treatise* 90–93 (2d ed. 1980) (noting that agencies may, but rarely do, limit their authority to reconsider decisions of individual members).[6]

Some agency regulations explicitly grant de novo review authority to the full board, *see, e.g.,* 16 C.F.R. § 3.54(a) (Federal Trade Commission); 17 C.F.R. § 10.104 (Commodities Futures Trading Commission); 43 C.F.R. § 4.320 (Board of Indian Appeals), while others explicitly deny it, *see, e.g.,* 20 C.F.R. § 802.301 (Department of Labor Benefits Review Board). The PAB has followed neither model. Accordingly, on the basis of the language of the reconsideration regulations and of the PAB's own contemporaneous explanation of those regulations as incorporating an appellate review approach, 51 Fed.Reg. at 7735, we are constrained to adopt the "negative implication" we warned "might ordinarily arise" from the identical language in the MSPB regulations, *Dunning v. NASA,* 718 F.2d at 1173.[7]

■ We conclude, then, that the PAB's reconsideration regulations do not permit the full board simply to reopen the decisions of individual members at any time to correct any errors. The PAB has limited

---

5. PAB counsel also assert that the entire board was in agreement on the broad scope of review, but differed only on its application to the facts of this case. We read the board's decision differently. The dissenter clearly disagreed with the standard of review applied by the PAB to his original decision as Presiding Member. He argued throughout that the PAB did not give sufficient weight to his findings of credibility and of fact, and disputed the PAB's right to substitute its own findings. PAB Dissent at 8–9, J.A. 31–32.

6. Section 557(b) of the Administrative Procedure Act provides further support for the proposition that while agencies may reconsider the initial decisions of hearing examiners, they may also limit their review authority:

> [w]hen the presiding employee makes an initial decision, that decision then becomes the decision of the agency without further proceedings unless there is an appeal to, or review on motion of, the agency within time provided by rule. On appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule.

5 U.S.C. § 557(b). We look to the APA, however, only by way of analogy, as it is not directly applicable to the PAB. The GAO is generally recognized as a part of the legislative branch, *cf.*

*Bowsher v. Synar,* —— U.S. ——, 106 S.Ct. 3181, 3189–91, 92 L.Ed.2d 583 (1986), and thus exempt from many APA provisions, including § 557, *see* 5 U.S.C. § 551(1)(A). Moreover, the PAB has its own set of procedures for resolving complaints and its own judicial review provision spelling out the applicable standard of review, 31 U.S.C. § 755.

7. The current controversy in the courts regarding whether the Social Security Appeals Council may exercise de novo review over the decisions of its administrative law judges does not address the question before this court. *See Mullen v. Bowen,* 800 F.2d 535, 539 n. 3 (6th Cir.1986) (en banc) (describing circuit split). The Social Security Appeals Council regulations, 20 C.F.R. § 404.970(a), differ materially from those of the PAB, particularly in that they require the Appeals Council to review a case if "[t]here is a broad policy or procedural issue that may affect the general public interest." 20 C.F.R. § 404.-970(a)(4). The scope of policy-oriented reconsideration is necessarily broader than that encompassed by ordinary appellate review language specified in the PAB regulations. 4 C.F.R. § 28.25(c)(3)–(5); 51 Fed.Reg. at 7735. Moreover, the Social Security regulations apply to Appeals Council review of the decisions of over four hundred ALJs, rather than those of a single board member.

its rehearing authority to reversing initial decisions only for lack of substantial evidence. Unless and until the PAB properly revises its regulations, it must restrict the scope of its review accordingly.

### 2. PAB Review of the Presiding Member's Decision Under a Substantial Evidence Standard.

We remand the record to the PAB and retain jurisdiction over the case pursuant to our rules. *See* D.C. Cir.R.13(d). On remand, the PAB may either decide that reconsideration was inappropriate and adopt the Presiding Member's decision as the board's final decision, 4 C.F.R. § 28.-25(b), or it may proceed to reconsider the Presiding Member's decision under the substantial evidence standard specified in its regulations, 4 C.F.R. § 28.25(c)(5). The term "substantial evidence" has already been defined by the Supreme Court as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. at 477, 71 S.Ct. at 459 (citations omitted).

 Under a substantial evidence test, the PAB may not simply substitute its judgment for that of the Presiding Member. The PAB must carefully consider the Presiding Member's findings and conclusions, and, if applicable, elucidate "its reasons for taking a different course." *Greater Boston Television Corp. v. F.C.C.*, 444 F.2d at 853. In the case before us, where credibility issues may determine the adoption or rejection of critical allegations made by both sides, the Presiding Member's findings are entitled to great deference. *National Ass'n of Recycling Indus., Inc. v. F.M.C.*, 658 F.2d at 824–25; *Jackson v. Veterans Admin.*, 768 F.2d at 1331.

### III. The PAB's Treatment of Chen's Claim

Because the PAB reconsidered Chen's claim under the incorrect legal standard, we remand without reaching the merits of his claim. As we have previously noted, it would be error for this court to decide, without giving the board an opportunity to do so in the first instance, whether substantial evidence supported the Presiding Member's decision. *See, e.g., Ommaya v. National Institutes of Health*, 726 F.2d 827, 830–31 (D.C. Cir.1984). This is not a case where there is only one supportable conclusion that the board could draw, and thus where remand would be futile. *Cf. American Federal of Government Employees v. FLRA*, 778 F.2d 850, 862 n. 19 (D.C. Cir.1985). On remand, the PAB may have to consider Chen's appeal from the GAO's adverse personnel actions against him, and his claim that those actions were retaliatory. These are two different, although related inquiries, and the burdens of proof fall differently in each case.

### A. Chen's Retaliation Claim.

GAO employees are prohibited from engaging in discriminatory personnel practices, including retaliation for the exercise of any appeal rights. 4 C.F.R. § 2.5(a), (i). Retaliation cases are reviewed by this court in much the same way as Title VII suits, following a well-established pattern of presentation and evidentiary burdens. *See Williams v. Boorstin*, 663 F.2d 109, 116 (D.C. Cir.1980) (adopting *McDonnell-Douglas v. Green* sequence of proof for discrimination cases, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 to Title VII retaliation cases), *cert. denied*, 451 U.S. 985, 101 S.Ct. 2319, 68 L.Ed.2d 842 (1981).

The petitioner must make out a prima facie case of retaliation before the case may proceed and before the employer must make any showing whatsover. Once that prima facie case is made, however, the burden of coming forward shifts to the employer to demonstrate a legitimate, non-retaliatory reason for the adverse action against the plaintiff, in this case, the denial of a within-grade salary increase followed by discharge. If the employer fulfills that burden, the employee must then come forward and show, by preponderance of the

evidence, that the employer's articulated rationale for the allegedly retaliatory action, is pretextual. Finally, in most situations, the employer is permitted one last defense: by clear and convincing evidence, the defendant must prove that the plaintiff would have been fired anyways, even absent retaliation. *Williams v. Boorstin*, 663 F.2d at 116–17.[8]

There appears to be no dispute that Chen has made out a prima facie case of retaliation. He has shown that he engaged in protected activity of which his employer had knowledge (i.e., Chen's original EEO complaint against the GAO), that he was adversely affected by an action of his employer, and a causal relationship between the two. *See Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980). The causal relationship may be inferred from adverse action that closely follows protected activity. *E.g., Hochstadt v. Worcester Foundation for Experimental Biology*, 425 F.Supp. 318, 325 (D.Mass.), *aff'd*, 545 F.2d 222 (1st Cir.1976). In order to reject Chen's claim that the GAO's adverse action against him was retaliatory, the PAB had to find that the GAO met its burden of coming forward with a legitimate nonretaliatory reason for denying Chen his within-grade salary increase and subsequently firing him. Although the ultimate burden of persuasion with respect to retaliation remains with the petitioner throughout, *see Texas Dept. of Community Affairs v.*

*Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), if the GAO does not put forward a "legally sufficient" explanation, *id.* at 255, 101 S.Ct. at 1094, Chen's prima facie case would remain unrebutted and he would prevail.

The GAO cited Chen's inadequate performance as the reason for both denying Chen his within-grade salary increase and eventually discharging him. The agency asserted that he performed poorly on three separate tasks: the literature search, the learning center evaluation plan, and the draft chapter on GAO courses. Dr. Medlin, Chen's supervisor, testified as to the deficiencies he found in Chen's work. The PAB accepted the GAO's explanation as sufficient and supported by substantial evidence. PAB Dec. at 9, J.A. 15.

Chen has argued at each stage in this litigation that the GAO's purported rationale for denying him his salary increase and discharging him was pretextual and that the adverse actions were actually reprisals for this successful EEO complaint. The Presiding Member reviewed all the evidence and testimony and found that the GAO's articulated reasons were pretextual. Dec. of the Presiding Member at 61, J.A. 135. The Presiding Member found that "the preponderance of the evidence, *including but not limited to the following examples,* ... provides reasonable basis to support inferences of retaliatory motives. *Id.* (emphasis added).[9]

---

**8.** This last defense is arguably not available in this case, because PAB regulations, 4 C.F.R. § 28.23(b), provide that "the agency's decision may not be sustained if the petitioner ... shows that the decision was based on any prohibited personnel practice described in 4 C.F.R. § 2.5." Retaliation for filing a Title VII appeal before the board is a prohibited personnel practice under § 2.5(i). This would appear to suggest that if Chen can demonstrate that the GAO's reasons for discharging him were pretextual, he would have to prevail.

**9.** The Presiding Member identified the following five examples of evidence supporting an inference of retaliation:

1—Franklin denied Chen's request for transfer, although historically such requests have been granted to other employees.

2—Chen's supervisor did not consider downgrading Chen instead of dismissing him because another person had been selected to fill Chen's position. [We note that this finding may be wrong, apparently based on an acknowledged transcription error. *See* PAB Dec. at 12–13, J.A. 18–19.]

3—Chen's supervisor maintained a diary on Chen's activities, in violation of GAO procedures.

4—The guidance and assistance given to Chen regarding his job assignments were inappropriate.

5—The standards of performance applied to Chen were more stringent than those applied to other employees performing similar tasks. Dec. of Presiding Member at 61–65, J.A. 135–39. In substantial part, the Presiding Member's findings are based on credibility determinations.

The full PAB reviewed the five particular examples listed in the Presiding Member's opinion and decided that the evidence was insufficient to support his conclusions. PAB Dec. at 12–14, J.A. 18–20. But the PAB reviewed the Presiding Member's findings of pretext in a de novo review posture, describing their duty as "correct[ing] any decision which was contrary to the overall weight of the record evidence." PAB Dec. at 14, J.A. 20. They declined to state "in even greater detail the areas of our disagreement with the Decision below," *Id.*, and plainly substituted their judgment as to what the record as a whole proved, for that of the Presiding Member. Despite his clear statement to the contrary, the PAB assumed that the Presiding Member's finding of retaliation was based solely on the five examples described in his decision. Moreover, the PAB gave no weight to the Presiding Member's credibility determinations, and ignored his extensive discussions of the evidence supporting each of his findings.

On remand, the PAB must consider carefully the Presiding Member's findings and explanations, and give deference to his credibility determinations. The board can overturn the Presiding Member's decision only if it concludes that his original decision was not supported by substantial evidence.

## B. *GAO's Performance-Based Adverse Action.*

Although Title VII law does not ordinarily require a defendant-employer to prove the substance of his articulated nondiscriminatory explanation for the adverse action, in this case, the PAB assumed, and we have no occasion to question, that the GAO would have had to justify its decision to deny Chen's salary increase and eventually discharge him under other statutory provisions.[10] On an appeal of an adverse action under 5 U.S.C. § 7701, the agency bears the burden of proof set out in that section. *See Jackson v. Veterans Administration*, 768 F.2d at 1329.

The majority and dissenting opinions of the PAB disagreed as to the standard of proof under which the GAO had to justify its decision to deny Chen's within-grade salary increase.[11] Despite acknowledging that this circuit has overturned it, the PAB followed its own precedent, *Kienzle v. GAO*, 1 PAB 28 (1981), holding that such a personnel action must be supported by substantial evidence.[12] The dissent correctly noted that the law of this circuit requires a preponderance of the evidence to support a within-grade denial, *see White v. Department of the Army*, 720 F.2d 209 (D.C.1983), and opposed the board's asser-

10. We assume from the record before us, that Chen was entitled to seek review of the GAO's adverse personnel actions against him, even absent his charge of retaliation. All five board members agreed that the GAO had to demonstrate under some standard of proof, rather than merely allege, that the salary increase denial and discharge were justified. Presumably the source of this burden, disputed only as to its specifics but not as to its existence, is §§ 7701–02 of the Civil Service Reform Act, as applied to the GAO through 31 U.S.C. § 753(d). *See* 4 C.F.R. § 28.23. *But see* 4 C.F.R. § 4.3 (excluding probationary employees from the application of certain appeal procedures pertaining to performance-based adverse actions).

11. There is no dispute that the standard of proof applicable to a performance-based discharge is substantial evidence. Because the PAB stated that the denial of Chen's within-grade increase, "formed the basis for the subsequent termination of Petitioner," PAB Dec. at 9, J.A. 15, on remand, the PAB should clarify whether sus-

taining the salary increase denial is necessary to a finding that the termination was justified.

12. The PAB stated:
[P]erformance-based actions such as Agency determinations regarding the denial of an employee's within-grade increase must be supported by substantial evidence on the record as a whole. *Kienzle v. GAO*, 1 PAB 28, 31 (1981). We recognize that the Court of Appeals for the District of Columbia Circuit has overturned this precedent. *White v. Department of the Army*, 720 F.2d 209 (1983). However, the Court of Appeals for the Federal Circuit and the Merit Systems Protection board still adhere to the standard which we enunciated in *Kienzle*. *Cf. Ommaya v. National Institutes of Health*, [726 F.2d 827], 84 FMSR 5420 (1984). We remain convinced of the correctness of our rationale in Kienzle, and choose to continue to follow the reasoning of the Court of Appeals for the Federal Circuit and the MSPB.
PAB Dec. at 4, J.A. 10. (footnote omitted).

tion of nonacquiescence, PAB Dissent at 2–3, J.A. 25–26. Since we have retained jurisdiction over this case, on remand, the PAB must apply the clearly established law of this circuit, i.e., the preponderance of evidence standard.[13]

## IV. CONCLUSION

The PAB has promulgated a set of regulations informing parties of the standard that will govern intra-agency review of their claims. Until it changes these regulations, it must process employees' claims in accordance with them. In this case it has not done so, and has reconsidered a Presiding Member's decision using a far broader scope of review than the regulations provide for. Thus we vacate the PAB decision and remand the record to the Board for a new "reconsideration."

---

13. As the dissenter demonstrated, the MSPB— on whose interpretation of 5 U.S.C. § 7701, the PAB majority relied in *Kienzle*—can apply the substantial evidence test because most of its cases go to the Federal Circuit, which accepts that test. But when the MSPB has a case likely to go to elsewhere, the MSPB applies the law of that circuit. PAB Dissent at 3, J.A. 26.

The PAB tried to insulate its decision by adding a footnote to its declaration of nonacquiescence, stating that even if the appropriate standard were preponderance of the evidence, "it is equally clear that the record herein does not support a finding that the Agency's actions were pretextual." PAB Dec. at 4 n. 1, J.A. 10. But if

the GAO is unable to comply with its statutory burden of proof to justify its adverse personnel action, that action may not be sustained. Moreover, this court has emphatically rejected "harmless error" arguments when the wrong burden of proof has been applied by the reviewing board. In *Ommaya*, the MSPB argued that even if it had applied the preponderance of the evidence test it would have denied the claimant's salary increase, so that there was no need to remand for consideration under the correct standard. The court responded that it was constrained by circuit precedent to remand. *Ommaya v. National Institutes of Health,* 726 F.2d 827, 831 (D.C. Cir.1984).